May Term,
1838.

M'CALL
v.
TREVOR.

## M'CALL v. TREVOR and Others.

An appeal-bond is not objectionable merely because the condition is, *inter alia,* for the payment of all costs that have *or* shall accrue, &c., instead of *and* shall accrue, &c.

An appeal will not be dismissed for the insufficiency of the appeal-bond, if a good bond be filed on the calling of the cause.

A mistake in the amount of an execution is amendable, at any time, by the judgment.

A *fieri facias* in *A.'s* favour was delivered to the sheriff, but before it was levied another in favour of *B.* was delivered to a constable and levied. *A.'s* execution was then levied on the same property. *Held,* that if *B.'s* execution be duly proceeded in to a sale, it has the preference; but if instead of being so perfected, it be recalled, the lien of *A.'s* execution stands in force.

A sale of goods by an execution-defendant, though *bona fide* and for value, if made after the delivery of the execution to the sheriff, does not affect the lien of the execution.

*Wednesday,*
*May* 30.

APPEAL from the *Henry* Circuit Court.

BLACKFORD, J.—*Trevor* and others recovered a judgment against *Carroll* in the *Henry* Circuit Court, at the *October* term, 1836. The judgment was for *the sum of* 1,327 *dollars and* 84 *cents,* together with costs. On the 23d of *May,* 1837, an execution issued on this judgment. The execution stated that the judgment was for *the sum of* 1,404 *dollars and* 92 *cents,* together with costs, and directed the sheriff to collect that amount. The execution was delivered to the sheriff on the 27th of *May,* 1837, and was levied on two certain horses on the 18th of *July,* 1837. *M'Call* filed before a justice of the peace a claim to the horses as his property, and, upon a trial before the justice of the right of property, he obtained a judgment in his favour. The execution-plaintiffs appealed to the Circuit Court.

*M'Call* moved to dismiss the appeal, because the instrument filed as an appeal-bond was not sealed. The Court granted a rule upon the defendants to show cause why the appeal should not be dismissed. The defendants thereupon filed a new appeal-bond, and the rule was discharged. The new bond is conditioned for the prosecution of the appeal with effect, and for the payment of the condemnation money and "all costs that have *or* shall accrue in the suit." This new bond was objected to, on the ground that the words in the condition,

"*or* shall accrue in the suit," ought to have been "*and* shall accrue in the suit;" but the objection was correctly over-ruled.

The cause was submitted to the Court, and the judgment is as follows:—That the horses belong to *Carroll*, and are subject to the defendants'-execution; that they are worth 170 dollars; and that the claimant pay the costs.

The first objection made to these proceedings is, that the appeal should have been dismissed. There is no reason for this objection. The statute provides, that the appeal shall not be dismissed on account of the informality or insufficiency of the appeal-bond, if the appellant will file a good one on the calling of the cause. R. C. 1831, p. 317. This provision applies to the present case.

The next objection made is, that, at the trial of the cause, the defendants were permitted to amend the execution so that the amount should correspond with the judgment. It is evident that the mistake was merely clerical; and it was therefore amendable by the judgment. This point was decided at the *November* term, 1836, in the case of *Doe*, dem. *Wilkins*, v. *Rue* and others.

There is one other objection. The plaintiff contends that the evidence does not support the judgment.

The material facts are these: The execution of the defendants against *Carroll* was delivered to the sheriff *on the 27th of May*, 1837, and was levied on the horses in question *on the 18th of July*, 1837. Two executions in favour of *Holland* against *Carroll* were issued by a justice of the peace, and delivered to a constable, *on the 30th of May*, 1837. One of them was levied on the horses *on the 19th of June*, 1837. The other was also levied on the horses, but the date of the levy does not appear. Another execution in favour of *Widup* against *Carroll*, was issued by a justice and delivered to a constable *on the 20th of June*, 1837, and was levied on the same horses, but the time of the levy is not shown. *On the 30th of June*, 1837, *M'Call* entered himself as replevin-bail in these cases, and all the executions which had been issued in them were accordingly recalled on the same day. On that day, also, *Carroll* executed to *M'Call* a bill of sale for the horses, but retained them in his own possession for and at the request of *M'Call*.

May Term,
1838.

M'CALL
v.
TREVOR.

The judgment for the defendants, upon these facts, is clearly right.

The horses were bound for the payment of the defendants' execution from *the 27th of May,* 1837, the day when it was delivered to the sheriff, and they continued to be so bound at the time the plaintiff filed his claim.   It is true, that one of the executions issued by the justice, though not delivered to the constable until the 30th of *May,* 1837, was levied on the horses *before* the levy of the defendants' execution; and it must be admitted, that if the execution first levied had been proceeded in to a sale, it would have been entitled to the preference.   But as this execution issued by the justice, together with the others which he had issued against *Carroll,* was not proceeded in after the levy, but was recalled, the priority occasioned by the first levy was lost, and the horses remained liable, as before the issuing of the executions by the justice, to the execution of the defendants.   This point is rendered clear by the statute of frauds.   The statute, after saying that the property shall only be bound from the time when the writ is delivered to the officer, enacts, that the lien shall be "divested in favour of another execution in the hands of another officer, without regard to the time of delivery, if such other officer make the first levy, *and proceed with due diligence in perfecting execution of the same.*"   R. C. 1831, p. 276.   This statute shows, that the first levy does not divest the previous lien, unless the levy be duly followed by a sale of the property.   If the execution first levied be recalled, as it was in the case before us, the lien of the other execution stands in full force.

The plaintiff's only claim to the horses is founded on the bill of sale.   Assuming the sale to have been upon a valuable consideration and *bona fide,* still, as it was not made until long after the defendants' execution was delivered to the sheriff, it does not affect the lien of that execution.   Bingh. on Executions, 190.—Watson on Sheriffs, 175, 176 (1).

*Per Curiam.*—The judgment is affirmed, with 10 *per cent.* damages on the value of the property levied on, and costs.

*S. W. Parker,* for the appellant.

*C. B. Smith, J. Rariden,* and *J. S. Newman,* for the appellees.

(1) After a *fieri facias* has been delivered to the sheriff, the defendant may convey his goods; but the sheriff has a right to levy the execution notwithstanding the transfer. By the statute of frauds, the right which was given to the sheriff by the writ to seize the property, no longer speaks from the *teste* of the writ, but from the time of its *delivery*, upon the receipt of which the sheriff is to levy; but, subject to the execution, the debtor has a right to deal with his property as he pleases; and if he transfers it in *market overt*, the right of the sheriff ceases altogether. *Samuel* v. *Duke et al.* in Excheq. 1838. 16 Leg. Obs. 436. S. C. 3 Mees. & Welsby, 622. Vide *Payne* v. *Drewe*, 4 East, 523.