## JOHNSON *v.* M'LANE.

If two persons exchange horses, with the privilege to one of the parties to return, within a given time, the horse received by him in exchange, and such party fail, within the time, to return the horse so received, the contract becomes absolute.

JOHNSON
v.
M'LANE.

And a breach of warranty as to one of the horses will not, of itself, affect the validity of the exchange.

The vendor of goods, though defrauded in the sale by the vendee, cannot treat the sale as a nullity, whilst he willingly holds in his hands a valuable consideration which he received for the goods.

A party having a right to rescind a contract, must exercise the right within a reasonable time.

A *fieri facias* binds the goods of the debtor from the time it is delivered to the sheriff, though the latter fail to indorse on it the time of such delivery.

After *A.* and *B.* had exchanged horses, a *fi. fa.* against the former was delivered to the sheriff; and after such delivery, *A.* and *B.* re-exchanged the horses. The sheriff afterwards levied the execution on both horses as *A.'s* property. *Held,* that such levy was not a relinquishment of the lien of the execution on the horse originally owned by *B.*

*Wednesday,*
*November 26.*

ERROR to the *Decatur* Circuit Court.

DEWEY, J.—Trial of the right of property taken on execution, on the claim of *Johnson* against *M'Lane* the execution-creditor. Cause appealed to the Circuit Court. Verdict and judgment for the defendant.

The facts are as follows: *M'Lane* recovered a judgment against one *Swope* in the *Decatur* Circuit Court, and, on the 13th of *June,* 1842, caused an execution to be issued thereon, which, on the same day, was delivered to the sheriff, who made no indorsement of the time of delivery upon it; on the 29th of *August* of the same year, the sheriff levied the execution on a mare, a bay horse, and a sorrel horse, as the property of *Swope*—the mare being found in the possession of *Johnson.* About the first of *June* aforesaid, the mare was owned by *Johnson,* and the bay horse by *Swope; Johnson* and *Swope,* then, made an exchange of the mare for the bay horse, and delivered possession of the animals accordingly. It was stipulated in the contract, that *Johnson* should have the privilege of returning the horse within three or four days, if, on trial, it was found he would not work well. A defect in one of the eyes of the horse was pointed out, and *Swope* declared that he was in other respects sound. There was evidence tending to show that the horse was a ridgling; that *Swope* knew the fact and did not disclose it to *Johnson.* After the expiration of the time limited for the return of the horse, *Johnson* declared that he worked well, and that it was his intention to keep him. There was other evidence tending to show that the horse worked well, but that he was

troublesome when harnessed with a mare, was vicious to other horses, and had to be kept by himself. About two months after the contract, and before the levy of the execution, *Johnson* demanded of *Swope* that he should take back the horse and rescind the contract, alleging as the cause of the demand the before stated situation of the horse; at this time the horse was worked to a low condition of flesh. The parties made a new contract by which *Johnson* received back the mare, and *Swope* the horse, and he received also with him fifteen hundred pounds of hay. Subsequently to this transaction, but before the levy, *Swope* exchanged this horse for a sorrel horse, with a third person. The sheriff seized all three of the animals, as before stated, on the execution as the property of *Swope;* and *Johnson* filed his claim for the mare, which is the property in dispute. *Johnson* and *Swope* were residents of the same village.

The Court charged the jury: 1. That by the failure of *Johnson* to return the bay horse within the period stipulated by the contract, the mare became the absolute property of *Swope*, was bound by the lien arising from the delivery of the execution to the sheriff, though the time of delivery was not indorsed on the writ, and was rightfully held by the levy. 2. That if in the first contract of exchange, *Swope* made a false warranty of the horse, or misrepresented his qualities, neither of those circumstances would affect the right of the execution-creditor to hold the mare on the execution. And the Court refused to instruct the jury: 1. That if *Swope*, at the time of the first contract, made false and fraudulent representations in regard to the soundness and qualities of the horse, no property in the mare vested in him; and that if *Johnson* got her back before the levy, she was not subject to the execution. 2. That the seizure of the bay horse on the execution was a relinquishment of the lien on the mare.

Three questions are presented by the facts of this cause, the solution of which will test the correctness of the decisions of the Court in reference to the instructions: Was the mare the property of *Swope*, the execution-debtor, at the time the writ was delivered to the sheriff? Was the delivery of the writ a lien upon that property? And if so, did the seizure of the bay horse on the execution discharge the lien?

As to the first question: If the contract of exchange between *Johnson* and *Swope* be viewed independently of a warranty which was broken, and of any question of fraud, there can be no doubt that the ownership of the mare was vested unconditionally in *Swope*, and of the horse in *Johnson*, by the failure of the latter to return the horse within the stipulated period. By such failure the contract became absolute, and effected a complete change of property in the two animals. The right of *Johnson*, under the contract, to return the horse ceased on the third or fourth day of *June*. *Swope*, of course, was the owner of the mare on the 13th of that month, the day on which the execution was delivered to the sheriff. But even if there was a *bona fide* but broken warranty in respect of the horse by *Swope*, that alone could not change the result. It did not annul the contract of exchange, and divest *Swope* of the ownership of the mare; she still remained his, as the horse belonged to *Johnson*. *Weston v. Downes*, 1 Dougl. 23. — *Power v. Wells*, Cowp. 818. — *Payne v. Whale*, 7 East, 274. — *Emanuel v. Dane*, 3 Campb. 299. — *Street v. Blay*, 2 B. & Adol. 456. — *Gompertz v. Denton*, 1 C. & M. 207. If the contract be viewed as fraudulent on the part of *Swope*, in consequence of wilfully false representations made by him, a question of more difficulty presents itself. There are many cases, certainly, in which it has been held, that a vendee acquired no property in goods obtained under pretence of a purchase brought about by his own fraud. But we know of no decision in which the vendor has been viewed as not having parted with the ownership of goods, while he willingly held in his own hands a valuable consideration received for them. On the contrary, we conceive the law to be that such a vendor is not at liberty to treat the sale as a nullity on account of the fraud of the vendee. *Burton v. Stewart*, 3 Wend. 236. The exchange of horses between *Johnson* and *Swope* was made about the 1st of *June*. If *Johnson* had the right to return the horse and rescind the contract, in consequence of the fraud of *Swope*, (with regard to which we give no opinion,) he was bound to do it within a reasonable time. Chitt. on Cont. 573. But he kept the horse and worked him nearly two months without complaint, and without any attempt to return him, though he had daily

opportunities of doing so had he desired it. It is not shown in excuse of this delay, that he did not sooner discover the objection to the horse; and from the nature of the objection, it is probable he must have known it in a very short time. We think, therefore, if the right to rescind the contract ever existed it was forfeited by delay. The mare was the property of *Swope* on the 13th of *June*, when the sheriff received the execution on which she was taken. It is true that, prior to the levy, *Johnson* had become the owner of her by his second contract with *Swope;* but he took her subject to the lien of the execution if a lien existed. *M'Call* v. *Trevor et al.* 4 Blackf. 496.

Did the lien exist? It is contended that it did not, because the sheriff did not indorse the time at which he received the execution upon it; that being, as is alleged, the only legal evidence of the date of the delivery of the writ to the officer. The statute which governs this point provides, that no writ of execution shall bind the goods of the execution-debtor, until the writ shall be delivered to the officer; whose duty it shall be to indorse upon it the day of the month, and the year, on which he received it. R. S. 1838, p. 318. This provision is contained in the statute of frauds and perjuries, which renders the objection to the lien on account of the absence of the indorsement on the writ plausible; but we do not think it can prevail. The lien was created for the benefit of the execution-creditor; and we cannot bring ourselves to believe, that it was the design of the legislature to deprive him of it without any fault of his own, and by the mere neglect of a ministerial officer over whose conduct he has no control. We conceive the object of directing the indorsement to be made was to facilitate proof, and to prevent confusion among different executions. It is, by the terms of the statute, the delivery of the execution, and not the memorandum of the time of delivery, which creates the lien. The creditor can choose his own time for placing the execution in the hands of the officer, but he cannot make the indorsement. We do not, therefore, believe that the latter is essential to the validity of the lien.

As to the third question,—whether the seizure of the horse upon the execution waived the lien on the property in dis-

pute,—it appears to us there is not the slightest room to doubt. It was no waiver. The horse was or was not subject to the execution. If he was subject to it, surely taking him did not relinquish the lien upon other property equally liable; and if he was not subject to it, the owner has his remedy against the officer. That is a question which does not concern the present plaintiff.

*Per Curiam.*—The judgment is affirmed with costs.

*G. H. Dunn,* for the plaintiff.

*C. H. Test,* for the defendant.