Cook v. Flint *et al.*

No. 90.

COOK v. FLINT ET AL.

SALE.— *Windmill.* — *Action for Price of.* — *Notice of Defects.* — *When Mill Deemed Erected.*—*Instruction to Jury.*—In an action for the recovery of the price of a wind-mill, under a contract of sale which provided, that notice of any defects in the mill must be given by the defendant to the plaintiffs within ninety days after the mill was put up, an instruction was proper which stated to the jury that the time when the mill-owner erected the mill was a question of fact for the jury to decide under all the evidence in the case, "but it should be deemed as erected in contemplation of law, when placed properly in position to perform the work intended, and left with the defendant as a performance of the contract read in evidence on the part of the plaintiff, even though in some of its parts it was not yet wholly and skilfully adjusted."

SAME.— *Waiver of Notice of Defects.*— *What Does not Constitute.*—The fact that the plaintiffs after the expiration of said ninety days made some repairs on the mill or remedied some of the alleged defects did not of itself constitute a waiver of the provision in the contract requiring notice to be given within ninety days after the mill was put up.

SAME.—*Evidence.— Conversation Relating to Defects.*—*Inadmissibility of.*—A conversation between the defendant and an alleged agent of the plaintiffs after the expiration of said ninety days was not competent for the purpose of proving notice to the plaintiffs of defects in the mill.

SAME.—A conversation within said ninety days between the defendant and M., a person alleged to be an agent of the plaintiffs, in which the defendant stated that the mill did not and would not work, and would have to be fixed or taken away, and requested M. to tell G., who had negotiated the sale of the mill, that it did not work and to come and fix it or take it away, is not admissible, the contract of sale requiring that notice of defects should be given to the plaintiffs, and there being no evidence that at the time of said conversation either of said parties was an authorized agent of the plaintiffs.

EVIDENCE.— *Conversation.— Cross-Examination.*—*Striking Out Questions and Answers.*— *When not Error.*—Where on cross-examination there has been a full examination as to all the details of a conversation, the exclusion of a single question and answer relating thereto will not be available error. It is not error to strike out on cross-examination a question and answer which have no reference to anything the witness had testified to in chief.

From the Marion Circuit Court.

*J. A. New* and *A. M. New,* for appellant.

*E. Marsh* and *W. W. Cook,* for appellees.

REINHARD, J.—This is the second appeal in this cause. On the former appeal the present appellees were the appellants, judgment having been rendered in favor of the present appellant who was the defendant below. *Flint* v. *Cook*, 102 Ind. 391. After the judgment had been reversed and the cause remanded to the Hancock Circuit Court, additional pleadings were filed and the cause was again put at issue. The appellees then asked for and obtained a change of venue to the Marion Circuit Court, where there was a second trial by jury, resulting in a verdict and judgment in favor of appellees and against appellant for $156.50, being the price of the wind-mill in controversy, and interest on the amount.

James N. Goble, a witness for appellees, testified in chief that he had called upon the appellant, Cook, at the instance of appellees, to see about a settlement of this bill and the taking of notes as provided in the contract; that upon this occasion he and Cook had some conversation about the condition of the mill, in which appellant claimed it did not work well; that witness climbed up to the wheel and examined it to ascertain its condition. Witness was a son of the appellees' agent who had effected a sale of the mill to Cook. Upon cross-examination the witness was asked and he answered two questions, as follows:

" Q. Did you say in that conversation you would tell your father? A. I said in that conversation that I would represent the facts in the case, as claimed by Mr. Cook, to my father.

" Q. Did you? A. I did."

Appellees' counsel thereupon moved to strike out these two questions and answers, which motion was sustained by the court, and for this ruling we are asked to reverse the judgment.

The last question and answer were clearly improper. Whether or not he told his father anything that occurred in this conversation was no part of any cross-examination as it

had no reference whatever to anything the witness had testified in chief.

The other question and answer were, perhaps, competent in the abstract. They may have been proper for the purpose of testing the memory of the witness or for other reasons, but there had been a full examination as to all the details of the conversation, and we can not conceive how the exclusion of this single question and answer could have harmed the appellant. Tomlinson v. Briles, 101 Ind. 538.

The testimony was competent only upon the idea of rebutting or explaining something to which the witness had testified in his examination in chief. It was not proper testimony for the purpose of proving notice, as this was a part of the appellant's defence, and it devolved upon him to prove such notice affirmatively. If he desired to elicit such affirmative testimony from this witness, he should have introduced him on his own behalf. Besides, there is a wide discretion vested in trial courts in reference to how long a cross-examination upon questions of extremely remote materiality may be continued, and unless there is a clear abuse of such discretion the ruling will not be interfered with on appeal.

The action of the circuit court is further complained of in refusing to permit the appellant to prove by the witness, E. B. Marshall, that he (witness) had a conversation with appellant about the 10th or 15th of December, 1882, and within ninety days next after the erection of the wind-mill, in which he notified Marshall, who, it was claimed, was an agent of the appellees, or at least of Goble who had negotiated the sale of the mill, that the mill did not and would not work, and would have to be fixed or taken away, and that he requested Marshall to tell Goble, the principal agent of appellees, that the machine was not in working order and to come and fix it or take it away.

We do not think there was any error in this. It did not appear that Marshall was at that time an agent of the ap-

pellees, if ever he had been such before.   Nor is there any evidence that Goble was then an agent of appellees.   The contract provided that if the mill did not work well the appellant was to notify the appellees, and not Goble.   But even if the ruling was erroneous, and we think it was not, the appellant was not harmed by it, as the witness proceeded, notwithstanding the court's ruling, to testify that he told Goble Cook was not satisfied with the mill, and that Cook had so told him.

The next alleged error consists, also, in the exclusion of testimony.   Jesse Cook, a witness for appellant, was asked in reference to a conversation which took place in February or March, 1883, between appellant and Goble in reference to defects in the wind-mill, and in which conversation Cook protested he would not receive the mill and requested Goble to remove it, and that afterwards, in May or June, the appellees made some repairs on it.

This conversation took place long after the ninety days subsequent to the erection of the wind-mill, and was, therefore, not competent as testimony to prove notice to the appellees of the defects in the mill.   The contract, as modified, required appellant to give such notice within ninety days after the mill was put up.

The fact that appellees afterwards made some repairs on it, or remedied some of the alleged defects, does not, of itself, constitute a waiver of the provision in the contract requiring notice to be given within ninety days.   The property in the mill had then vested in the appellant.   *Waters Heater Co.* v. *Mansfield*, 48 Vt. 378 ; *Mowbray* v. *Cady*, 40 Iowa, 604 ; *Johnson* v. *McLane*, 7 Blackf. 501.

The position of counsel for appellant that the mill could not be regarded as erected until all the defects had been cured and the mill put in thorough working order, can not be sustained.   If the machine was to be perfect in the first place why provide for any repairing or putting in order?

Why the necessity of giving notice of defects when none were contemplated?

Other·questions put to the appellant and other witnesses were objected to and excluded, but what has been said applies substantially to all other rulings of the court in the rejection of evidence offered by appellant and need not be further considered.

The fourth instruction given by the court, of its own motion, is assailed. This instruction is as follows:

" The time when the mill-owners erected the said mill is a question of fact for the jury to determine under all the evidence given in the cause; but it should be deemed as erected, in contemplation of law, when placed properly in position to perform the work intended, and left with the defendant as a performance of the contract read in evidence on the part of the plaintiffs, even though in some of its parts it was not yet strictly and skilfully adjusted."

Appellant complains that this instruction " is calculated to deceive a juror and teach him to conclude that if all the parts of the machine were in some wise put together, although not strictly nor skilfully done, nevertheless this was such a putting together as is within the meaning of the contract."

The appellant also insists that as the court told the jury the question of erection was one of fact for its determination, it was inconsistent and improper to tell them in the same instruction that it was not necessary that all should be skilfully done in order to constitute such an erection of the machine.

There is no merit in these objections. In the main, the question of when the mill should be regarded as erected was one for the jury. But if it had " been placed properly in position and left with the defendant as a performance of the contract," it was certainly time for the appellant to inquire whether the mill was put up in compliance with the contract, and if not, then to give the notice provided for in the con-

tract. The "leaving of the mill with the appellant as a performance of the contract," was equivalent to the asserting of a claim by the appellees that the work of erecting the mill was done. The appellant had ninety days' time from then to inform himself of the condition of the mill, and if he discovered any blemishes or failures in the performance of the work for which it was designed, it was his duty to give notice thereof to the appellees, and, failing in this, the title to the property vested in him, and the law requires him to pay for it.

The cases cited by appellant in support of the proposition that the mill could not be considered as delivered until it was set up, are not applicable to the case at bar. There is no question here about the mill not being "set up" in time; it is only as to whether all the machinery was in working order. There was no error in this instruction.

Other objections are urged to the giving of instructions and to the refusal of the court to give certain other instructions asked for by the appellant, and to the modification of still others asked for by the appellant and given in a modified form.

We have examined the instructions given and those refused, as well as those given as modified, and we think the court presented the law to the jury fairly and in substantially correct form, and that no material injury has been done the appellant by the rulings of the court in reference to these instructions.

The judgment is affirmed.

Filed June 12, 1891.