## Price *against* Junkin.

Upon the trial of an issue involving a question of fraud, when evidence has been given tending to prove a fraudulent arrangement between two persons to effect an object, the acts and declarations of either, although not in the presence of each other, may be given in evidence.

Although a sale of land by an executor, in pursuance of powers contained in a will, may be fraudulent and void as respects the purchaser, because of his having been a party to the fraud, yet as respects a subsequent and innocent purchaser from him, the title will be good.

ERROR to the common pleas of *Mifflin* county.

This was an action of ejectment by Richard Miles, administrator *de bonis non* of William Junkin deceased, against Joseph Price and John Moist.　William Junkin, by his will, appointed David Lusk to be the executor, with power to sell his real estate.　The executor offered the land for sale at public vendue, and sold the same to Joseph Price, one of the defendants, for 3100 dollars.　An application was made by the heirs of William Junkin to the orphan's court, to dismiss David Lusk from his executorship, for several reasons ; and, among others, that the sale of the real estate to Joseph Price was fraudulent, having been made for a consideration much below the value of the land, and for the benefit of himself, as well as Price. David Lusk was dismissed by the orphan's court, and letters of administration *de bonis non* were issued to Richard Miles, the plaintiff ; who brought this ejectment to recover the land for the benefit of the devisees and legatees of William Junkin, the testator, on the same ground, that the sale by Lusk the executor to Price was fraudulent.　After the plaintiff had proved that on the same day of the sale to Price the land had been struck down to another person for 4000 dollars, and the executor, Lusk, had immediately demanded the money, and because it was not paid refused to confirm the sale ;

and that another substantial man had offered 3500 dollars cash for it, which the executor refused, and put it up again at public sale, after all the bidders were gone but Price, and struck it down to him for 3100 dollars; and also several other *circumstances,* tending to show that there was a fraudulent arrangement between Lusk and Price, by which the property was to be struck down and conveyed to Price, for the benefit of both: he offered in evidence the declarations of Lusk, the executor, made in the absence of Price, that the purchase was for their joint benefit, and also many other acts and declarations of his, leading to, the establishment of the same fact. This evidence was objected to, on the ground that the title of the defendants could not be affected by the declarations of the grantor not made in the presence of the defendant. But the court (Burnside, president) decided, that, inasmuch as evidence had already been given tending to establish a fraudulent combination between Lusk and Price, any declaration or act of either or both, which tended to establish the fraud, might be given in evidence. The plaintiff then proved the admission of Lusk to the scrivener who wrote the deed, that he was equally interested with Price in the purchase. It was also proved that Lusk and Price, at different times, declared that the land was worth more than it was sold for.

While Price was in possession of the land under his purchase, he sold part of it to John Moist, the other defendant. There was evidence on the part of the defendants, that part of the purchase money had been paid by Price to Lusk, after the deed was made. The defendants requested the court to charge the jury, that the plaintiff could not recover without first tendering to the defendant the amount of the money which was actually paid by him to Lusk. And, also, that, if John Moist was not a party to the alleged fraud, but an innocent purchaser for value from Price, there could be no recovery against him. To which the court answered, that if the original contract between Lusk and Price was fraudulent, it was void, and no title was in Price; that there was no necessity to refund the money paid; and that Moist was in no better situation than Price from whom he purchased.

The errors assigned were: the admission of the evidence mentioned, and the instruction of the court on the two points above stated.

*A. S. Wilson,* for plaintiff in error. As to the admission of the evidence: cited, Ruchart v. Castator, 5 *Binn.* ; Whiting v. Johnson, 11 *Serg. & Rawle* 328; Wolf v. Carothers, 3 *Serg. & Rawle* 240. And as to the interest of Moist being affected by the fraud : Covert v. Irwin, 3 *Serg. & Rawle* 283.; Heister v. Fortner, 2 *Binn.* 40; Scott v. Gallagher, 14 *Serg. & Rawle* 333 ; Harris v. Bell, 10 *Serg. & Rawle* 39 ; Gonzalus v. Hoover, 6 *Serg. & Rawle* 118; Plumer v. Robertson, 6 *Serg. & Rawle* 179. That the purchase money should be refunded : Youst v. Martin, 3 *Serg. & Rawle* 423.

*Miles* and *Potter*, contra, cited, Heldreth *v.* Sands, 2 *Johns. Ch.* 35 ; Inhabitants of Worcester *v.* Eaton, 13 *Mass. Rep.* 374.

The opinion of the Court was delivered by

SERGEANT, J.—The defendant's bills of exception to evidence were, in this case, fourteen in number. They all depend very much on the same principle. The first four are chiefly relied on. We think the reasons assigned by the court below for the admission of the plaintiff's evidence conclusive, and that there was no error in receiving it.

In the charge of the court no error has been exhibited, except in that part of it which relates to the claim of the defendant, Moist. This involves an important principle, and one which the court decided incorrectly. The defendants requested the court to charge, " that Christian Moist, being an innocent purchaser for a valuable consideration, cannot be affected by any act of Price and Lusk." The court answered, " if the sale was fraudulent, and Lusk had an interest in it, then the sale was utterly void, and Moist, having purchased from one of the parties to that fraud, will not be protected." And again ; " our opinion is, that Moist is in no better situation, under all the evidence in this case, than Price."

The tract of land for which this ejectment was brought, had belonged to William Junkin deceased, who died seised, leaving a will by which he authorized his executors to sell it. David Lusk, the only executor who acted, advertised the land for public sale in November 1827, and it was struck off to the defendant Joseph Price, to whom Lusk made a deed in January 1828. Letters of administration with the will annexed, were afterwards issued to the plaintiff, (in consequence of proceedings in the orphan's court against Lusk) and the plaintiff instituted this ejectment to April term 1832, alleging the sale to Price to have been a contrivance between Lusk and Price to defraud the children of the testator, by purchasing the land in the name of Price, at an inferior value, for their mutual benefit. In April 1831, Price executed a deed to the other defendant, Christian Moist, in consideration of 518 dollars and 75 cents, for twenty acres and one hundred and forty-one perches, part of the tract.

An innocent purchaser of the legal title, without notice of trust or fraud, is peculiarly protected in equity, and chancery never lends its aid to enforce a claim for the land against him. The children of Junkin, through the administrator *de bonis non* as their trustee, seek to set aside a conveyance made by an executor acting under a power in their father's will. They ask to enforce an equity : to declare the grantees under the executor trustees for them, and to reinvest them in the title. As between the original parties, Lusk and Price, there is no difficulty in doing so, when it is shown that the conveyance from one to the other was fraudulent and collusive. But to go further, and hold that an innocent purchaser shall be

[Price v. Junkin.]

made a trustee for them, would be to destroy, in their favour, a paramount equity.   No doctrine is more firmly settled in chancery, than that though a purchaser has notice of an *equitable* claim by which his conscience is affected, yet a person purchasing from him, *bona fide,* and without notice of the right, will not be bound by it.   *Sugd. Vend.* 531.   Otherwise the innocent purchaser would be the victim of fraud, and titles would be unsafe : especially in a country like ours, where deeds and wills are registered, and their contents confided in as muniments of property, instead of covenants of title, outstanding terms, and other devices of the English system of conveyancing.   Here Price had a conveyance from Lusk, the executor empowered to convey, and Moist had no reason, so far as appears, to question or suspect it.   If a loss is to happen by the exercise of that power, it should be borne by those representing the testator who created it, and thereby enabled the executor to transfer the legal estate ; not by the person who trusted to a title derived under that power, and on its face fair and legal.   In such case equity would not declare Moist a trustee for the children, nor interfere to divest the title he has acquired.

If the title to Price could be treated as a *nullity,* when proved to have been fraudulently obtained, it would not thence follow that the title of Moist, acquired from Price, was a nullity.   The principle has long been established at common law, and repeatedly sanctioned in equity, that though a deed be fraudulent in its creation, and voidable by a purchaser (that is, would become void by a person's purchasing the estate), yet it may become good by matter *ex post facto.* As if a man make a feoffment by covin, or without any valuable consideration, and then the first feoffee enter, and make a feoffment for a valuable consideration, the feoffee of the first feoffee shall hold the lands, and not the feoffee of the first feoffor.   For although the estate of the first feoffee was, in its creation, covinous or voluntary, and therefore voidable ; yet when he enfeoffed a person for a valuable consideration, such person shall be preferred.   *Sugd. Vend.* 472. This doctrine is elucidated and confirmed in the case of Anderson *v.* Roberts, 18 *Johns. Rep.* 515, in which it is shown, that the statutory enactments (generally more unyielding in their construction than the common law) fully protect such purchasers, as well against creditors as subsequent purchasers.   On this error the judgment is reversed.

Judgment reversed, and a *venire facias de novo* awarded.