[Philadelphia, April 13th, 1839.]

## VAN AMRINGE *against* MORTON.

#### IN ERROR.

If a deed which has been executed and acknowledged by the grantor, with a blank for the grantee's name, be surreptitiously and fraudulently taken from the grantor's house, and the blank filled up, no title passes thereby; and a *bona fide* purchaser, for a valuable consideration from the person holding the deed, stands in no better situation than such fraudulent holder, especially if the original grantor remain in possession of the property.

Error to the District Court for the City and County of Philadelphia, to remove the record of an action of ejectment, brought by Henry Van Amringe against William Morton, for a messuage and lot of ground, situate in the city of Philadelphia.

On the trial before Stroud, J., on the 6th of February, 1837, the plaintiff gave in evidence a deed from Levi Ellmaker to William Morton, in fee, dated the 15th of April, 1833, conveying the premises; a deed from William Morton to Thomas Glenn, in fee, dated September 20th, 1834, for the same; and a deed from Thomas Glenn to Henry Van Amringe, in fee, dated October 31st, 1834, for the same.

The defendant's counsel for the purpose of affecting the validity of the deed of September, 20th, 1834, from William Morton to Thomas Glenn, offered to prove certain matters, and among other things, &c.

1st. That the deed was executed and acknowledged with the name of the grantee left blank, and 2nd. That the deed was kept by Wm. Morton locked in his drawer, and that he trusted the key thereof to Isaac Morton, his brother, who was induced by one Daniel T. Glenn, to fill up the said deed, and deliver it to the said Glenn, without the knowledge or consent of Wm. Morton, and against the instructions given by Wm. Morton to Isaac Morton, at the time he so trusted his key to Isaac Morton; but the defendant did not allege, that he intended to prove any knowledge of, or notice to the plaintiff of the several matters and things objected against said deed; and the counsel for the defendant called the said Isaac Morton, and

(Van Amringe v. Morton.)

offered to prove by him the said several matters, whereupon the counsel for the plaintiff objected to the admission of such parol testimony for the purpose; but the learned judge admitted the testimony and overruled the objection so made by the counsel for the plaintiff. The witness testified as follows:—

" An arrangement was made between Daniel T. Glenn and Wm. Morton, for the sale of a house in Arch above Schuylkill Seventh street, in September, 1834; not later than that. The object of this arrangement, so far as I understood, was the payment of two notes held by Chauncey Hoffman and Giles Love, each for one thousand and fifteen dollars, drawn by D. T. Glenn, and endorsed by Wm. Morton; the purchase-money for the house was six thousand five hundred dollars, subject to the ground-rent; from which was to be deducted two mortgages of two thousand two hundred and five hundred dollars; and Glenn was to account to Morton for the balance of the house, three thousand eight hundred dollars. The matter lingered in this condition until October 23rd; the deed was made out in the mean time, by W. A. Patrick; the grantee's name was in blank, Glenn stating that Giles Love would take the property and give the notes. On the 23d October, Morton told Glenn, if he would procure the notes and give him a draft on D. & I. Morton for two thousand dollars, he would make a deduction from the price, of five hundred dollars; Glenn then for the sake of availing himself of this allowance, immediately drew the order of two thousand dollars; and as I was one of the firm of D. & I. Morton, I immediately accepted it, and it was handed over to Wm. Morton. Glenn proposed that the matter should be closed that evening; we were then at the corner of Market and Eleventh streets. Glenn said he would go out to Giles Love's dwelling in Chesnut street, and I should go to Wm. Morton's dwelling and get the deed; and he, Wm. Morton, was to go to Wm. A. Patrick, to get him to come and fill the blank.—Glenn and I started together, and he went with me to Morton's dwelling— Morton gave me the key of his desk before we started—I took the deed out of his desk—Glenn opened it and looked over it, and proposed that I should put his father's name in the blank. I told him I had no right to do so. He said he wanted the deed to show Love and get the notes—that his father would give Love a mortgage for the two notes, on the house. I still declined to do so—he said that Wm. Morton would not be afraid to trust him with the deed and I need not.—He said, that is the way the matter stood; Wm. Morton was in debt to him for the balance due on the house and more; and he brought out the copy of an account in the name of Britton and Glenn for lumber, which was assigned to him on the dissolution of the partnership—he said I had known him for a long time and need not be afraid to trust him. I put the name of Thomas Glenn in the deed, and told him if he would return it to me I would lend it to

(Van Amringe *v.* Morton.)

him. He said he would take it immediately to Mr. Love, and if he got the notes he would deliver them to my brother immediately, and if he did not see Love or get the notes, he would return the deed to my brother. I went back to Eleventh and Market, and waited; he did not return. I have not seen the deed since. The notes were subsequently paid by my brother to Chauncey Hoffman—(identifies one of the notes dated 6th June, 1834, at six months.) These notes were endorsed for Glenn's accommodation—the arrangement contemplated the payment of those notes. At the time I was sent for the deed, it was acknowledged, and the receipt was signed, if my memory is correct. My brother did not authorize me to insert the name of Thos. Glenn in the deed." Cross-examined:— " I am the brother of Wm. Morton, he has never demanded damages of me for this affair: I have never tendered him any. I shall never give him any amends, or tender of damages, unless I am compelled to. I don't know how far I am liable for damages, in a legal point of view. I do not consider myself liable for damages in any point of view, as Mr. Glenn was present when the instructions were given. I don't know what amount my brother owed Glenn. I never heard my brother say since, that he was not in debt to him. When I gave Glenn the deed, I took a receipt in writing from him for a debt for lumber, owed by Wm. Morton to him—I took it in the back of my brother's receipt book, my brother did not authorize it, I took that receipt at the time I gave up the deed. The main object in taking the draft of two thousand dollars, was in consideration of Love's notes, it was not mentioned that it should go into the consideration of the house at all. Glenn was to render his account and have it settled that evening."

The counsel for the defendant, then called Giles Love, in order to show the payment of the notes by Morton; and also to prove that he had seen the said deed in an unexecuted state. Whereupon the counsel for the defendant objected to the evidence, but the learned judge overruled the objection. The witness then testified.

" I received two notes of one thousand and fifteen dollars, each drawn in favour of Wm. Morton, for lumber furnished to Glenn by Chauncey Hoffman. I was present at the payment of the notes, in the close of 1835. Hoffman purchased a house of Wm. Morton, and the notes were taken in part pay. I saw the deed in question after it was executed, and before the grantee's name was inserted: in the fall of 1834; I think I saw the same deed afterwards—Glenn's father's name was in it; my idea of seeing it blank is however confused. When Glenn had it at my house, it was a perfect deed, executed and acknowledged." The counsel for defendant, then asked the witness to relate a conversation between Glenn and the witness, at the time he first saw the deed; to which question the plaintiff's counsel objected, but the learned judge overruled the

(Van Amringe *v.* Morton.)

objection and the witness answered :—" I had a conversation with Daniel T. Glenn, at the time I saw the deed. I told Glenn I had no authority to take the house for the debt; I suggested that he should put in the name of Thomas Glenn. He was anxious to convey the property to C. Hoffman."

A variety of other testimony having been given on both sides, the defendant's counsel recalled Isaac Morton, who testified as follows:

" Glenn did not come back to the corner of Eleventh and Market streets; he went to see Giles Love towards Schuylkill, and I went back. Parsons and Morton were together. I waited till dark, till bell rang for supper.:—Ely was not there, Ely was not present; nor present when we started."

The defendant's counsel then asked the witness to state what Wm. Morton told him when he returned, as he stated, and communicated to him that he had filled up the deed and delivered the same: to which question the plaintiff's counsel objected; but the learned judge overruled the objection, and allowed the question to be answered. The witness proceeded :—" When I went back, my brother said I should not have entrusted Glenn with the deed, nor written in the deed without his consent. My brother and I never had a settlement. I think I owe him a balance: he has made me some endorsements. I think I have not paid him in full for the draft."

The learned judge then charged the jury as follows, viz:

" An important question of law has been raised by the plaintiff's counsel. It is this:—That admitting the deed at the time of its acknowledgment had no party's name on it, and that afterwards the name of Thomas Glenn was fraudulently inserted in it, without the knowledge and consent of the defendant, yet the plaintiff being a purchaser for valuable consideration, without notice of the fraud of Glenn, his title is not to be affected by this fraud. The answer to this that I give is:—If you believe that the name of Thomas Glenn was not originally inserted on the deed from Wm. Morton, nor was on it when it was acknowledged, and that it was not inserted by William Morton, nor by his authority, but on the contrary without his knowledge and against his consent, and that he has never given his assent to it, either expressly or by his conduct, and that he has never given possession under this deed of the house and lot purporting to be conveyed by it, but was in possession himself when Van Amringe bought, and the deed was made to him by Glenn, and ever since, then this deed gave no title to Van Amringe, but it remained in Wm. Morton the same as if the deed had not existed."

The jury found for the defendant, and the plaintiff sued out a writ

(Van Amringe *v.* Morton.)

of error, and on the return of the record made the following assignment of errors :—

" 1st. Because the judge below erred in admitting in evidence the matters referred to in the bill of exceptions, offered in proof by the defendant below, to affect the validity of the deed of September 20th, 1834, from Wm. Morton *to* Thomas Glenn, inasmuch as the plaintiff was not present at the time said matters took place, nor was privy to or had notice thereof; and the same was offered as parol testimony to contradict a written deed, perfect on its face, in the hands of the plaintiff, a subsequent purchaser, for a valuable consideration without notice.

2d. Because the judge below erred in admitting in evidence the several matters offered to be proved by Giles Love.

3d. Because the judge below erred in admitting in evidence the conversation between Giles Love and Daniel T. Glenn, referred to in the bill of exceptions.

4th. Because the judge below erred in admitting in evidence the several matters sworn to in the deposition of Alexander H. Parsons.

5th. Because the judge below erred in admitting in evidence the declarations of Wm. Morton made to Isaac Morton.

6th. Because the judge below erred in point of law in his charge to the jury throughout, first in not affirming the plaintiff's position ; and secondly in the answer given thereto."

Mr. *Hirst* for the plaintiff in error, cited *M'Williams* v. *Martin,* (12 *Serg. & Rawle,* 269.) *Chew* v. *Barnett,* (11 *Serg. & Rawle,* 389.) *Read* v. *Dickey,* (2 *Watts,* 459.) *Clark* v. *Hawthorn,* (3 *Yeates,* 269.) *Youst* v. *Martin,* (3 *Serg. & Rawle,* 430.) *Somerville* v. *Turner,* (4 *Har. & M'Hen.* 43.) *Cresson* v. *Miller,* (2 *Watts,* 272.) *Clyde* v. *Clyde,* (1 *Yeates,* 92.) *Simons* v. *Gibson,* (1 *Yeates,* 291.) *Hubley* v. *White,* (2 *Yeates,* 133.) *Lighty* v. *Shorb,* (3 *Penn. Rep.* 450.) *Withers* v. *Atkinson,* (1 *Watts,* 236.) *Congregation* v. *Miles,* (4 *Watts,* 146.) *Reed* v. *Dickey,* (2 *Watts,* 459.) *Covert* v. *Irwin,* (3 *Serg. & Rawle,* 283.) *Plumer* v. *Robertson,* (6 *Serg. & Rawle,* 179.) 2 *Sugden on Vendors,* 315. *Young* v. *Union Canal Co.* (1 *Wharton's Rep.* 410.) *Gilday* v. *Watson,* (5 *Serg. & Rawle,* 267.) *Steinhauer* v. *Witman,* (1 *Serg. & Rawle,* 438.) *Hart* v. *Porter,* (5 *Serg. & Rawle,* 204.) *Carnahan* v. *Hall,* (*Addison,* 127.)

Mr. *Holcomb* and Mr. *Meredith,* for the defendant in error, cited *Buller's N. P.* 176. *Sands* v. *Codwise,* (4 *Johns. Rep.* 536.) *Morris* v. *Vanderen,* (1 *Dall.* 64.) *Prevost* v. *Gratz,* (1 *Peters's C. C. Rep.* 369.) *Moore* v. *Bickham,* (4 *Binn.* 1.) *Withers* v. *Atkinson,* (1 *Watts,* 249.) *Sigfried* v. *Levan,* (6 *Serg. & Rawle,* 308.)

(Van Amringe v. Morton.)

The opinion of the Court was delivered by

ROGERS, J.—It is one of the essential requisites of a good deed, that it be delivered by the party himself, or his certain attorney. A deed takes effect from this tradition or delivery; and if it wants delivery, it is void *ab initio.* 2 *Bl. Com.* 308. 1 *Shep. T.* 57. The evidence tended to show, that the deed of Morton to Glenn, under which the plaintiff claimed title, was never delivered either by Morton or his authorised attorney. "Delivery is either actual, *i. e.* by doing something and saying nothing; or, also verbal, *i. e.* by saying something and doing nothing; or it may be, by both: and either of them may make a good delivery, and a perfect deed. But by one or both these means, it must be made; for otherwise albeit it be never so well sealed and written, yet is the deed of no force. And though the party, to whom it is made, take it to himself, or happen to get it into his hands, yet will it do him no good, nor him that made it, any hurt, until it be delivered. And as proof of the delivery is a matter *in pais,* so parol evidence is properly admissible to show, that the deed is wanting in that essential requisite." 1 *Shep. T.* 57.

The Court, in that part of the charge which has been made the subject of exception, ruled that if the deed was never delivered, no title passed to the plaintiff, although he may have been a purchaser for a valuable consideration, without notice. The facts given in evidence, proved that the deed was never delivered, either by Morton or his attorney; that the possession of it was surreptitiously and fraudulently obtained by Glenn; if so, according to the authorities above cited, the deed was void *ab initio;* of no force and effect whatever. But this is on the supposition that the grantor has done no act ratifying the delivery; for a deed may be delivered by the party himself or by his appointment or authority precedent, or assent or agreement subsequent; for *omnis ratihibitio mandato equiparatur.* If, therefore, the plaintiff could have proved, that the grantor, as he suggests, had received the purchase-money for the property, it would have amounted to an assent to the delivery of the deed to Glenn. But this was a matter for the jury; and does not enter into the exception to the charge as presented by the record. Unless there was a subsequent recognition of the delivery, or there was something done by the grantor, which enabled the grantee to deceive the purchaser, no title passed any more than in the case of a deed that was forged. But the jury have negatived every allegation of that kind. They have found, that the grantor retained the possession of the property as before the pretended sale; which was of itself notice to the purchaser so as to put him on inquiry as to the title. A *bona fide* purchaser, for a valuable consideration from a fraudulent grantor, is protected by the statute of frauds. But that is, because such fraudulent conveyances are not absolutely void, but are voidable

(Van Amringe *v.* Morton.)

only, at the instance of the party aggrieved. The legal title passes to the purchaser; for although void as to creditors, it is good as to the grantor : it therefore comes within a well known principle, that where the equities are equal, the legal title shall prevail. A *bona fide* purchaser is as much a favourite of the law as creditors, and perhaps, ought to be more so ; as he looks to the property itself specifically, whereas creditors look to the general funds. On this principle, the Court ruled *Price* v. *Junkin*, (4 *Watts*, 85.) That was the case of the sale of land by an executor, in pursuance of a power contained in a will. It was held, that the title, although fraudulent and void as against the purchaser from the trustee, because of his having been a party to the fraud, yet, as respects a subsequent and innocent purchaser from him, the title was good. As between the original parties, the conveyance is good, although subject to be defeated, in the one case by the children, and in the other by the creditors; but inasmuch as the legal title passed, it together with an equal equity, gave preference to the subsequent and innocent purchaser. In *Price* v. *Junkin*, Justice Sergeant says, " If a loss is to happen by the exercise of that power, it should be by those representing the testator, who created it, and thereby enabled the executor to transfer the legal estate; not by the person who trusted to a title derived under that power, and on its face, fair and legal."— But this principle cannot apply, when the deed was not delivered, and when the party is in no default.

We do not perceive the force of the objection to the evidence of the conversation between Giles Love and Daniel T. Glenn. The witness, at the time he saw the deed from Morton to Glenn, told Glenn he had no authority to take the house for the debt, and suggested that he should put in the name of Thomas Glenn, which was afterwards done. The evidence was pertinent, as it tended to show, that at the time the witness saw the deed, it was unexecuted. Nor is it any objection, that this was a conversation between Daniel T. Glenn and the witness, because, as appeared from the testimony, the whole matter resulted from a contrivance of Glenn for his especial benefit, and took place before he surreptitiously obtained the possession of the deed, upon a false suggestion from Isaac Morton. Upon the same principle, that it is a part of the *res gestæ*, the declarations of William Morton to Isaac Morton were properly admitted in evidence.

Judgment affirmed.