(126 So. 622)

## FAIRBANKS MORSE & CO. v. DEES et al.
### I Div. 825.

Court of Appeals of Alabama.

April 2, 1929.

Rehearing Denied May 14, 1929. Affirmed on Mandate Nov. 26, 1929. Rehearing Denied Dec. 10, 1929.

Smiths, Young & Johnston, of Mobile, for appellant.

R. P. Roach, of Mobile, for appellees.

RICE, J.

The facts in this case, essential to a decision of the question which we deem controlling in its disposition, are substantially as follows:

Appellees were in need of an engine to operate their cotton ginnery. They wrote appellant, making known their desire. Whereupon an agent of appellant, invested with full authority, was sent to confer with appellees. The conference was had, and appellees, relying, as they had the right to do, upon the representations of the agent of appellant, that such was a "good engine," as "good as new," and that it "would give them the same service as a new engine," and that appellants "would give them the same guarantee on the engine as they would on a new engine," entered into a contract of purchase, and purchased a "rebuilt engine"—first, however, requiring appellant, by its agent, to execute a written contract of sale, containing the above-mentioned guarantee, to wit: "This engine is rebuilt and will carry however the same guarantee as a new engine."

The engine was delivered to appellees, and installed by appellant, all in accordance with the terms of said written contract of sale; appellees, upon said installation, and after the engine was operated "without a load," signing an acknowledgment of its receipt, and said installation, etc.

Immediately, or shortly after, ginning was begun by appellees—the "load" was put upon the engine—a "gasket" blew out on same. Not knowing the trouble, appellees put in another "gasket," and resumed operations. In a short while "out goes the gasket" again. Once more it was repaired by appellees. After this had occurred two or three times, appellees called appellant, in a distant city, on the telephone, whereupon an agent of appellant was sent to repair the engine. This agent

evidently did not find the trouble, although he did something to the engine, and stated to appellees that it was then all right. More "gaskets" blew out, more delays, more complaint from appellees, whereupon another agent of appellant was sent, and came, to inspect the engine. *This* agent located the trouble, pointed it out to appellees, repaired it temporarily, stating to appellees that it would probably hold until the season. was over. It did. And appellees then called upon ----"---- 'o repair said engine. This the ap-
by furnishing and putting in a new
nd the engine was finally and com-
)aired by appellant in February,
was kept and used by appellees
year of 1927.

be stated that negotiations for the
f the engine began in June, 1926,
vas installed August 16, 1926, and
for defect it was, was definitely
by appellees láte in October, 1926.
on December 28, 1926, appellees,
h appellant to repair said engine,
done, as we have stated above, in
1927.

)n is in deceit, and the law, which
overns, is thus laid down in the
the case of Thweatt v. McLeod, 56

:presentation of a material fact,
1other has a right to rely, whether
lly and intentionally, or from mis-
ertence, or ignorance, will operate
contract founded on it. * * *
injured by it has his election, ei-
)ind the contract, or, affirming it,
damages for the injury, or insist
tter of defense to an action found-
)ntract."

think this other excerpt from the
he Thweatt Case, supra, has ap-
re:

s tainted with fraud, or into
rty is induced by mistake, or by
tation, are capable of ratification
ation; and the ratification or con-
ires the infirmity."

se, until appellant furnished to ap-
ngine in accordance with the rep-
of its agent making the sale, we
hold, that the contract of sale
aid to be "in a sense executory,"
in the same way, and to the same extent, as the contract referred to in the opinion in the case of Pollock et al. v. Pope, 209 Ala. 195, 95 So. 894, wherein our Supreme Court, speaking through Mr. Justice Gardner, used this language:

"Pope, therefore, while the contract was in a sense executory, with full knowledge of all the facts, electing to proceed with its execution, obtaining a benefit, and his grantors sustaining a corresponding detriment,

will be regarded as having ratified and confirmed the contract, and will not be allowed subsequently to impeach it. The evidence upon this phase of the case is well within the influence of Thweatt v. McLeod, 56 Ala. 375."

■ We are of the opinion that, when appellee discovered the defect in the engine purchased by them (said discovery being made in October, 1926), they had their election: "either to rescind the contract, or, affirming it, to recover damages for the injury, or insist on it (the existence of the defect) as matter of defense to an action founded on the contract."

■ They could have done either of these things, but they could not keep the engine, call upon appellant to repair it, receive and accept the repairs—which manifestly involved a detriment to appellant, and admittedly placed the engine in the condition it should have been in when they bought it— and still maintain their suit for damages as for deceit in its sale to them.

As said by Mr. Chief Justice Brickell in the opinion in the case of Thweatt v. McLeod, supra:

"If, while the contract is executory, the party injured, with full knowledge of all the facts, elects to proceed in its execution—enters into new negotiations and stipulations, whereby he obtains a benefit, and the other party sustains a corresponding detriment—he is regarded as ratifying or confirming the contract, and it becomes obligatory on him. Edwards v. Roberts, 7 Smedes & M. 544; Pearsoll v. Chapin, 44 Pa. 9."

And, as was also said by the learned Chief Justice, in the opinion just quoted from, so it may be said here, by us, that "in this transaction, the appellant [appellees here] must have intended an affirmance of the original contract, or he [they] intended to lull the vendor into security—into reliance on it, and into the belief that he [they] designed its performance; thereby obtaining the benefit of an extension of the time of payment, while secretly intending, after he [they] had realized the benefit, to impeach the contract for a misrepresentation of which he [they] had abstained from complaining. To suppose the last was his [their] intention, is the imputation to him [them] of an intentional deception, more offensive in good morals than the misrepresentation attributed to the vendor. The one may have been made innocently, through ignorance, mistake, or inadvertence. The other is willful, and deliberate, for the purpose of deceiving."

The only difference that we can see is that in the case we are considering appellees, instead of getting "the benefit of an extension of the time of payment," got instead the benefit of "repairs made on the engine."

In the view we have taken of the case, it results that the trial court erred in refusing to

give, at its request, the general affirmative charge in favor of appellant. The other questions presented it seems unnecessary to consider.

For the error pointed out, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

### Opinion after Remandment by the Supreme Court.

PER CURIAM.

In its original opinion in this case this court pretermitted a consideration of a large number of the assignments of error which were argued on the appeal, on the assumption by it that such consideration was not requisite to a proper disposition of the cause.

Now, after remandment of the case by the Supreme Court, we have, en banc, given study to these hitherto unconsidered assignments of error.

Deeming it profitless to set out our reasons in detail, we state our conclusion that error, for which the judgment should be reversed, appears in the rulings underlying none of said assignments of error, and that, upon the authority of the opinion by the Supreme Court, on certiorari, in this case, the judgment appealed from should be, and is, affirmed.

Affirmed.