Smith et al. *v.* South Royalton Bank et al.

---

SPENCER SMITH AND ELIZA L. SMITH, *his wife, v.* THE SOUTH ROYALTON BANK, HENRY M. BATES and HEMAN CARPENTER.

## (IN CHANCERY.)

*Deed. Escrow. Principal and agent. Notice. Bank Director.*

A deed deposited by the grantor with a third party, to be held by him and not delivered to the grantee until some other thing is done, will have no validity until the performance of such condition, even though the depositary in fraud of the grantor, deliver it to the grantee, who takes it in good faith and in ignorance of any condition imposed upon its delivery, and advances a valuable consideration for it.

The recording of such a deed by the consent of the grantor will not render it binding upon him in the case of such a fraudulent delivery of it by the depositary to a *bona fide* grantee, if the grantor consented to such recording with

the express understanding that the depositary should still retain the deed after it was recorded until the performance of the condition upon which it was to be delivered.

The orators deposited a mortgage executed by them with R., to be held by him as an *escrow* until a bond of indemnity from P. should be furnished them by T. R. delivered the mortgage to the grantee without T.'s having furnished such a bond, and without the orators' knowledge, the grantee, however, being ignorant of any condition as to its delivery and taking it in good faith and for value; *Held,* that the fact that after the orators became aware of the unauthorized delivery by R. of the mortgage, they expressed to **T.** a willingness to take, and a desire that he should furnish them, a bond of indemnity from B. in the place of that of P., and also that they neglected for two months after they ascertained that the mortgage had been improperly delivered by R., to notify the holder of it that they claimed it to be invalid, did not amount to a ratification of its delivery by R.

If a director of a bank act in behalf of the bank in a transaction of which the bank takes the benefit, notice at the time, to the director, of any fact material to such transaction, is notice to the bank.

BILL IN CHANCERY. From the bill, answers and testimony, it appeared that in August, 1856, Daniel Tarbell, Jr., then a director in the South Royalton Bank, a corporation organized under the general banking law of 1851, requested the orator, Spencer Smith, to execute to such bank a bond and mortgage of his home farm in Tunbridge to enable the bank, by an assignment of such bond and mortgage to the treasurer of the State, under the provisions of that law, to obtain an increased issue of their registered bills ; that Tarbell promised to pay Smith seventy dollars per annum for the use of his farm for that purpose, and also agreed to furnish him a bond from one Pierce, indemnifying him against any loss by reason of the execution of such bond and mortgage ; that Smith, in reliance upon this agreement, executed a bond to the South Royalton Bank, in accordance with the provisions of the general banking law, for twenty-four hundred and eighty dollars, payable in 1865, with interest semi-annually, and the orators executed a mortgage of their home farm to secure the payment of this bond ; that this bond and mortgage were not delivered by the orators to Tarbell nor to the bank, but it was expressly agreed between Tarbell and the orators that they should not have any effect nor be delivered to any one to be used for any purpose whatever until the indemnifying bond of Pierce

should be furnished the orators, but that in the mean time they should be held by one Rolfe, to whom they were then handed by the orators. It was, however, at the suggestion of Tarbell and Rolfe, agreed by the orators that, for the sake of expediting the transaction, the mortgage should be recorded in the town clerk's office in Tunbridge, but that after it was so recorded Rolfe should still retain possession of the bond and mortgage, and not deliver them to the bank, nor to any person to be used in any way for banking purposes till the indemnifying bond of Pierce was furnished. Rolfe received the bond and mortgage from the orators with this express agreement, and procured the latter to be recorded. The bond and mortgage were then, without the knowledge of the orators, assigned by the bank to the State treasurer, and were taken by Rolfe, accompanied by Tarbell, to the treasurer's office, where Rolfe delivered them to Tarbell, who, without the orators' knowledge, delivered them to the defendant, Bates, the then State treasurer, and received for them from Bates Virginia stocks and registered bills of the bank to the amount of the bond, which stocks and bills were thereafter used by and for the benefit of the bank.

It appeared that all the officers of the bank except Tarbell, as well as the State treasurer, were entirely unaware of any stipulation on the part of Tarbell to furnish the orators a bond of indemnity, or that the bond and mortgage were handed by the orators to Rolfe with any restriction of his power and authority to deliver them, but that all of the parties except Tarbell and Rolfe acted in perfect good faith in the transaction.

On Tarbell's return from the State treasurer's office he sent seventy dollars to Smith to pay him for the use of his farm for banking purposes for the first year, but Smith refused to accept it until the bond of indemnity should be furnished. The orators were not aware until February, 1857, that their bond and mortgage had been passed into the treasurer's hands. Shortly after they had learned this fact a conversation took place between Spencer Smith and Tarbell, wherein the latter said he thought he could obtain for the orators an indemnifying bond from Chester Baxter, which Smith urged him to do. At the same time Tarbell told Smith to take the seventy dollars which had been lying

subject to his order at the union store in Tunbridge since the August previous, and said that if a satisfactory indemnifying bond was not furnished within a very short time the money should be regarded merely as a loan from Tarbell to Smith, and upon this understanding the latter consented to receive it.

In April, 1857, the orators notified the State treasurer that the bond and mortgage in question had been fraudulently obtained and used; and that they should resist the payment thereof. This was the first notice that the State treasurer received of any claim of this kind on the part of the orators.

The defendant, Carpenter, in July, 1857, was appointed receiver of the South Royalton Bank by the court of chancery for the purpose of collecting its assets, redeeming its bills and discharging its remaining indebtedness. It appeared that Tarbell was insolvent.

The bill set forth substantially these facts, and prayed for an injunction restraining the South Royalton Bank, the State treasurer and Carpenter, from proceeding in any way to collect the orators' bond and mortgage, and also that they might be decreed to deliver the same up to the orators.

BARRETT, chancellor, upon hearing, made a decree in accordance with the prayer of the bill, from which the defendants appealed.

*Wm. Hebard* and *Lucius B. Peck*, for the orators.

1. A deed or other written instrument takes effect *from delivery*, and until the *maker* parts with the possession, and yields up his right to control it, the writing has no legal existence, and no other person can gain any rights under it; *Harrington et al.* v. *Gage et al.*, 6 Vt. 532 ; *Fish* v. *Gordon*, 10 Vt. 288 ; *Fairbanks* v. *Metcalf*, 8 Mass. 230 ; *Stiles* v. *Brown*, 16 Vt. 563 ; *Ladd* v. *Ladd*, 14 Vt. 185 ; *Fletcher* v. *Austin et al.*, 11 Vt. 447.

The delivery of a deed is a *question of fact* involving *intention;* *Lindsay* v. *Lindsay*, 11 Vt. 621 ; *Roberts* v. *Jackson*, 1 Wend. 478.

In the case at bar there is no complaint as to the facts. The witnesses all testify in substance that the deed and bond were deposited with Mr. Rolfe, for him to keep till Mr. Tarbell should

Smith et al. *v.* South Royalton Bank et al.

procure the indemnifying bond, with strict instructions not to give it up till the bond was procured, which was never done.

The depositing a deed with a third person for him to keep till the happening of some future event, is not a delivery; *Clark* v. *Gifford*, 10 Wend. 311.

2. That the orators consented to have the deed put upon record makes no difference so long as the condition remained upon which the delivery depended; *Maynard* v. *Maynard*, 10 Mass. 456.

The record is only one link in the chain that forms a perfect title to real estate, but the essential one is *delivery*, and if that is wanting it matters not *how many* or *how few* of the others have been supplied.

" Tenth or ten thousandth breaks the chain alike."

3. There is but one principle involved in this case, and that is in relation to the delivery of the deed and bond, and if they were not delivered by the *maker* or by *his consent*, it matters not how they came in circulation nor who is affected by it; *Pawling et al.* v. *United States*, 4 Cranch 219.

The effect upon third persons would be the same if they were obtained by breaking the grantor's lock as by breaking the confidence of the person with whom they were entrusted.

4. Neither the treasurer nor the bank have any interest in this question, but if they had it would make no difference, for every man, when he receives the paper of another, takes it at his own risk as to its genuineness; *Awde* v. *Dixon*, 5 Law & Eq. 512; *Maughs* v. *Dixon*, 18 Law & Eq. 82; *Caskell* v. *Taylor*, 15 Law & Eq. 101.

5. The consent of the orator to substitute the bond of Mr. Baxter for that of Mr. Pierce, was no delivery of the deed, nor a consent that it might be used, but was an abiding evidence that the deed was not to be used till some bond was furnished.

*H. Carpenter* and *P. T. Washburn*, for the defendants.

1. The orators base their claim for relief upon the ground that the bond and mortgage was to be held by Rolfe as an *escrow*, not to be used by Rolfe until the bond of Pierce was furnished to Rolfe for their indemnity. The bond and mortgage in controversy were executed in due form, and the orators consented to the

assignment and recording of the same in the proper office, that they might be ready for use, and they were duly assigned and the mortgage and assignment recorded as the law requires. It is further admitted that after the orator had knowledge that Tarbell and Rolfe had passed said instruments to the treasurer, they made a further agreement to take the bond of Chester Baxter as a substitute for the bond of Pierce, and received the bonus of seventy dollars which Tarbell was to pay them for the use of the farm for banking purposes. Clearly, then, whilst the instruments *remained* in the hands of Rolfe, they were subject to the control of the orators; if the bond of Pierce was not furnished, yet after their agent had used them for the purposes for which they were designed, and, with this knowledge, the orators had made a new contract to take the bond of Baxter, and received the bonus; it is a waiver on their part of the first condition, and in equity an adoption of the act of their agent. Rolfe, the orator's agent, was satisfied to part with the instruments, and did so ; *Pratt* v. *Holmans*, 16 Vt. 530.

2. The South Royalton Bank had no knowledge of the agreement between the orators and Tarbell about the bond of Pierce, and the bond and mortgage in controversy, being all fair on their face, were received by the treasurer in good faith, without notice of any such arrangement as is now claimed, the treasurer parting with their full value, relying upon the genuineness and validity of the instruments in the usual course of business, and the orators in equity and fair dealing are bound by their own acts, and must look to their agent for any misconduct of his. The orators having furnished the *means* by which they are damaged, must bear the loss, instead of those who have acted in good faith relying upon the conduct of the orators as they had a right to do ; *Passumpsic Bank* v. *Goss & Page*, 31 Vt. 315 ; *Brockway* v. *Mason*, 29 Vt. 519 ; American Leading Cases, Vol. 1, page 328, and notes and cases there cited.

3. This kind of paper (the bond and mortgage) is created by the statute of 1851, and when executed in conformity to law the treasurer is *bound to receive it*. He has no discretion in the matter except as is pointed out by law. See the general banking law, acts of 1851, sec. 7, 8 and 9.

4: The orators, having neglected to notify the treasurer for an *unreasonable time* after they had notice that he held the bond and mortgage in controversy, and after all opportunity had passed for him to protect himself and the bill holders, and the creditors of the bank, should be estopped from setting up the illegality of their bond and mortgage.

BENNETT, J. This is a case of very considerable importance, and we have endeavored to give it a careful consideration. We have no doubt, from the testimony, that the bond and mortgage in question in this case were delivered *conditionally* to Rolfe; to be delivered by him to the State treasurer, when the orator, Spencer Smith, should be indemnified from all loss and damage which should be occasioned to him by reason of the same, and not before. No precise form of words is necessary to make an instrument an *escrow*, and an *escrow* has been well defined to be the *conditional delivery* of an obligation or deed, which is to take effect upon the happening of some event consistent with the instrument, and not a condition of delivery repugnant to the contract and varying its terms. It is laid down in our elementary writers, that an *escrow* can never take effect as a deed till the performance of the condition, even though the grantee gets possession of it before such performance; and in *Hinman* v. *Booth*, 21 Wendell 267, it was held that the condition must be *literally* fulfilled, and that where the condition was that the grantee was to give a bond for the support of a third person, and such bond had not been given, the deed could not take effect, although the support had been in fact furnished such third person during his life, and he had deceased. Until the condition is performed the deed is of no more force than it would have been if the grantor, after signing and sealing the instrument, had deposited it in his own desk. The delivery is a part of the execution of the instrument, and is essential to its vitality; see 1 Shep. Touchstone 59; 2 Hilliard on Real Property 303, secs. 131 and 132.

It is not in fact seriously contested in this case, but that the bond and mortgage were delivered to Rolfe as *escrows*, and that they were delivered over to the State treasurer by Rolfe without authority, and *in fraud* of the rights of the orators, inas-

much as Pierce's bond of indemnity had never been procured, and the case is put upon the ground that the State treasurer, under the banking law of 1851, took the bond and mortgage in *good faith* for value paid, and that he has a good right to have them enforced, that the same may become assets of the bank in the hands of the receiver for the benefit of the bill holders of this insolvent institution. We are not disposed to question the fact that the bond and mortgage were received by the treasurer in *good faith* and for value, and that one of the two innocent parties must suffer, and the question now is, which it must be ? In the case of an *escrow* the estate does not pass, but remains in the grantor until the condition has been performed and the deed delivered over, and if the deed be delivered over without a performance of the condition, it cannot be an operative delivery to pass the estate. In this case Rolfe was the special agent of the grantors to hold the bond and mortgage till the condition was performed, and no presumption can arise of his having a general agency, if that should be thought to be of any importance. The deed not having been delivered it was a nullity and void, or more properly speaking, *never existed*, and must be tainted with the *fraud* of Rolfe, which goes to the very existence of the instruments, into whosesoever hands they may come. It is not like the cases where the *fraud is collateral*, as where the instrument has become a perfect one, and it is appropriated fraudulently to a use different from the one for which it was created. It is then the important question in the case, whether from the facts disclosed there. is any good ground to hold that the grantors cannot avail themselves of the want of a delivery of the bond and mortgage ?

It is said on the part of the defence that the orators ought to be bound by the delivery of the bond and mortgage by Rolfe, although he has been guilty of a gross fraud and has transcended his authority, because the orators have enabled him to mislead an innocent party, and that the *maxim* of natural justice well applies to this case with its full force, " that he who, though without any intentional fraud, has put it in the power of another person to do an act which must be injurious to himself, or to another innocent party, shall himself suffer the loss, rather than the other party who has placed confidence in him."

Smith et al. *v.* South Royalton Bank et al.

Though this position may seem specious, yet we think, as applied to this case, it is not sound. The authority delegated to Rolfe was to do a single act, and his agency was of the *most special kind*, requiring him only to perform a single act, strictly ministerial in its character. Mr. Smith, in his treatise on Mercantile Law, a work of great accuracy, on page 59, 2d edition, after defining a general agent, proceeds to say, "his authority cannot be limited by any private order or direction not known to the party dealing with him. But the rule, he says, is directly the reverse concerning a particular agent, that is, an agent employed specially in one single transaction, for it is, he adds, the duty of the person dealing with such a one to ascertain the extent of his authority, and if he does not do it he must abide the consequences." So in Paley on Agency by Lloyd, 3d edition, 199, note, after stating the rule applicable to general agents, and the assumptions to be made that they have an unqualified authority to act in all matters within the scope of their agency, it is said, "in the case of a particular agent, that is, one employed specially in that single instance, no such assumption can be reasonably made, and it becomes the duty of the person dealing with him to ascertain by inquiry the nature and extent of his authority, and if it be departed from he must be content to abide the consequences."

This distinction, he says, will explain all the cases in the text. See also Smith's Mer. Law, 3d ed. 107, 108; *Wooden* v. *Burford*, 2 C. & M. 395; *Jordan* v. *Norton*, 4 M. & W. 155; *Sykes* v. *Giles*, 5 M. & W. 645.

Where one of two innocent persons must suffer from the *fraud* of a third person, the inquiry naturally arises, which gave the credit? Smith is not chargeable with holding out Rolfe as possessing larger powers than he in fact had; and the State treasurer, not having ascertained the true extent of his powers, though this may be without any personal fault in him, must, as between Smith and himself, be regarded as having trusted to Rolfe rather than Smith, or in other words, the State treasurer, or rather those in whose behalf he was acting, must sustain the loss occasioned by *the fraud* of Rolfe rather than Smith. If an agent in dealing for his principal, strictly within his authority,

commits a fraud in the sale of property, the principal must answer for it, unless he chooses to repudiate the fraud and restore the dealer to his former situation. He cannot adopt the dealing and repudiate the fraud. The *maxim* in relation to which of two innocent persons shall suffer from the fraud of a third person, is not to be so extended as to make the principal responsible for the want of the general integrity of his agent, and for his acts attended with fraud which are not included within the power conferred upon him. Such an application of the maxim would break down well settled principles, and would prevent the principal from defending upon the ground that it was the fraud of the agent, even in cases where the agent acted in a matter beyond the extent of his powers. The maxim was first applied by Lord HOLT, in an action for a *deceit* in the sale of some silks by an agent who had authority to make the sale ; 1 Salk. 289. In such a case the application of the maxim is well enough, but here Rolfe was a special agent to deliver the deed upon a special condition, and the fraud consisted in his doing an entire act which he had no authority to do. It might have been better, if the law had required that it should appear upon the face of a deed that it was delivered as an *escrow*, and if such had been the rule grantees might have been more secure against fraud, but as was well said by Ch. J. MARSHALL, "the law is settled otherwise, and it is not to be disturbed by the court ;" 4 Cranch 222. The position that an agent with limited powers cannot bind his principal when he transcends his powers, and that the person dealing with him is bound to know the extent of his powers, is too well established to be questioned ; 1 Peters 290. The bond and mortgage then was a *nullity* in the hands of the treasurer *for the want of a delivery*, and he cannot escape this consequence by an application to the case of the maxim which is sometimes applied, as between two innocent parties. This is not like the case of *Pratt* v. *Holman et al.*, 16 Vt. 530. There the deed was delivered to the agent appointed by the grantee to procure it. In such a case the delivery to the agent was effective to pass the title, although it was delivered upon a condition which had not been performed; 1 Selden 238 ; 8 Mass. 238. In legal effect it was a delivery to the grantee.

Besides, the court in *Pratt* v. *Holman* put the case upon the

ground that the agent was satisfied with *the promise to pay the money*, and if not paid, an action might be had on the promise. This was clearly a case where the deed took effect from the time it was delivered to the agent.

The case at bar is one that does not fall within the *law merchant* as to negotiable paper. The general rule of the common law is that an assignee takes a chose in action, subject to all the equities that existed between the original parties. In the case of *The Mechanics' Bank* v. *N. Y. & N. H. R. R. Co.*, 3 Kernan 599, the plaintiffs were *bona fide* holders of the certificates of stock for value advanced at the time, and Schuyler was, at the time the certificates were issued, president of the company, and also *transfer agent*, whose business it was, on the transfer of stock on the books in his charge, and the surrender of certificates, to issue new certificates of stock to the transferee, and the certificates in that case issued to Kyle were in the usual form, and were duly transferred by Kyle to the plaintiffs. Kyle and the transfer agent of the company were both parties to the *fraud*, and yet it was held that the railroad company could not be made liable to the bank on the ground that Schuyler was their transfer agent. The certificates not being commercial paper, the ordinary rule was applied. See also *Grant* v. *Norway*, 70 Com. Law 665; *Coleman* v. *Riches*, 29 Eng. Law & Equity 323; *The Schooner Freeman* v. *Buckingham et al.*, 18 Howard U. S. 182.

The case of *The Farmers & Mechanics' Bank* v. *The Butchers & Drovers' Bank*, 2 Smith (N. Y.) 125, where the *paying teller* had certified a bank check *to be good*, in violation of his duty, the drawer having no funds in bank, was decided purely upon the ground that a bank check was *negotiable paper*, and governed by the law merchant.

We think the orators are not precluded from urging in their defence a want of authority in Rolfe to deliver the bond and deed, by reason of their holding him out as having such authority.

The only pretence for this arises from the naked fact that the orators consented that the assignment might be made upon the papers, and the deed put on record, while Rolfe held them as *escrows*. This, it seems, was done simply to expedite the business. In *Maynard* v. *Maynard*, 10 Mass. 456, it was well held that the grant-

or's putting a deed upon record did not constitute a delivery of the deed to the grantee. No title could pass out of the grantors of course by the force of its being recorded, but still the question remains, what shall be the effect of putting such apparent title on record, so far as the rights of the treasurer are concerned, who acts as a trustee? Tarbell, who negotiated with the mortgagors for this mortgage to the bank, was at the time one of the directors in the bank, and was a party to the transaction, and privy to the conditic ·n upon which the papers were put into Rolfe's hands, and the object of having the deed put on record while in the hands of Rolfe. Notice of these facts to Tarbell, a director, in the very transaction itself, was notice to ·the bank.

The mortgagors should not in this case be *estopped* from insisting upon a want of the delivery of the deed by reason of the record. To hold this would only be asserting in another form, that *fraud*, where the act is one of pretended agency, is no defence. It would subvert the settled doctrine that the assignee takes subject to all equities between the original parties. Besides, the putting the deed upon record was not by implication a representation of any other fact, and not designed to influence the treasurer to accept the deed without any valid delivery, but it was consented to to facilitate the completion of the whole business. No question can be had but what the bond and deed were a *nullity* in the hands of the bank, and both Tarbell and Rolfe were guilty of a gross fraud in passing them off to the treasurer. The bond and the mortgage then being, as between the orators and· the bank, of no more force than so much blank paper; and utterly *void*, they are incapable of confirmation, so as to confer a title to the assignee of the bank. It is no doubt true that there is a radical distinction, as it respects the rights of a *bona fide* purchaser or assignee without notice, between a *void* and a *voidable* instrument. If, for instance, a voluntary and covinous deed of lands is made to a grantee, and he conveys to a *bona fide* purchaser without notice, the purchaser shall be preferred to the creditors of the fraudulent grantor. In such a case the deed is valid as between the parties, and *voidable* only by the creditors of the vendor. It may be conceded as a sound principle of law that in cases of *voidable deeds* and *obligations* the *bona fide* assignee

or purchaser stands in a better situation than the participant in the fraud, but not so if the instrument was *void*. In the case of *Martin* v. *Miller*, 4 Term 320, it was held that an unauthorized alteration in a bill of exchange, after acceptance, by which the time of payment was shortened, avoided the instrument, and that no action could afterwards be maintained on it, even by an innocent holder for value. The case of *Awde* v. *Dixon*, 5 Eng. Law & Equity 512, seems by the court to be put upon the ground that the note never became a perfect instrument, as against the defendant, inasmuch as there was no authority, express or implied, from him for a delivery of the note.

But let the principle be as it may in regard to commercial papers, no question can be made as to a *void deed*. The case of *Van Armage* v. *Miller*, 4 Wharton 382, is ruled expressly on the distinction between a *void* and a *voidable* deed, and it was there held that a *bona fide* purchaser for a valuable consideration from the person holding a void deed stands in no better situation than such fraudulent holder. The distinction is fully recognized in *Price* v. *Yunkin*, 4 Watts 85, and the case decided upon that distinction. So in *Arrison* v. *Harmstead*, 2 Barr 191, 195, it was held that a deed having been rendered void by an alteration, a purchaser without notice and for valuable consideration was in no better situation than the original parties. The case in the 4 Wharton, as in the case at bar, was one where there had been no valid delivery of the deed. So in the case of *Pawling* v. *United States*, 4 Cranch 219, there had been no delivery of the deed. It hardly need be remarked that if a deed wants delivery, it is *void ab initio*.

Where a *bona fide* purchaser for value holds under a vendee, who holds by a *voidable* deed, though he and the creditors of the vendor have equal equities, yet the purchaser has also the legal title and shall be preferred. In the case at bar, though the bill holders of the bank represented by the treasurer and the orators have equal equities, yet as the bond and deed are *void*, the legal title remains in the orators and they should be preferred under the common rule, that where the equities are equal, the one having the legal title prevails.

It becomes necessary to see whether in this case there was a
24

subsequent recognition of the delivery of the bond and deed by the orators, or something done by them which enabled Rolfe and Tarbell to deceive the assignee, and should exclude the orators from relief. We think, from the evidence, there is no ground to find the fact that Smith subsequently ratified the delivery of the bond and mortgage. When he found the papers had been fraudulently delivered by Rolfe, he had a right to try to extricate himself from loss. If he had accepted some other security in the place of Pierce's bond, it might have operated as a recognition of the delivery, but his willingness to take other security should have no such operation; and as to the reception of the seventy dollars, which by the contract he was to have for the use of his farm, for putting it in for banking purposes, as it was called, he accepted it, not under the original agreement, but under a new agreement, that it should be treated as money lent unless Tarbell should subsequently indemnify him against the bond and mortgage. The omission of Smith to give earlier notice to the treasurer of his defence cannot be construed into a ratification of the delivery of the papers, and though, if the treasurer had had earlier notice, he might have been enabled to make all things right with the bank, yet that should not throw the loss upon Smith. Both the treasurer and Smith no doubt supposed the bank amply safe, and there was at that time nothing to cause alarm in the minds of either, and no sufficient reason in law or fact is shown why Smith should have been required to give earlier notice to prevent a waiver of his defence to the bond and mortgage.

We think that the treasurer cannot claim to take this case out of the ordinary rule upon the ground that he has been misled as to the extent of the authority of Rolfe, by the act of Smith. The bond and mortgage were, it is true, put into the hands of Rolfe, and by him carried to the treasurer in company with Tarbell, and though Rolfe and Tarbell passed them to the treasurer professedly in behalf of the bank, yet this was in no way the act of Smith, and it does not appear that they exhibited any authority from the bank so to do, and no inquiries were made of Rolfe as to his powers, and not only Rolfe and Tarbell acted in fraud of the rights of Smith, but the bank also are chargable with participating in the fraud,

Ballard v. Bond.

inasmuch as notice to Tarbell, a director in the bank, is to be regarded as notice to the bank, of the terms upon which Rolfe held the possession of the papers. It may be conceded, perhaps, that this is a hard case for the bill holders, but would it not be much harder for the orators if they are to be visited with the fraud of Tarbell, of the bank, and of Rolfe, through whose wrongful conduct claim is made ? No doubt fraud may be committed on an innocent purchaser, but had we not better encounter that risk rather than attempt to give effect to a *void deed*, simply on the ground that the grantors should be estopped from contesting it, for the reason that they consented that it might be recorded, before it was delivered, for an honest and laudable purpose. In the ordinary case a deed purports upon its face to be an *absolute* deed, and purports to have been signed, sealed, acknowledged and delivered, yet the law is well settled that it may be shown by parol that it was delivered as an *escrow*, and if it has also been recorded, still it may be shown to be only an *escrow*, and the fact of its having been recorded is of itself no evidence that the person who held the instrument as *an escrow* in his hands after it was recorded, held it with enlarged powers, as to his *agency*, and the principles of law applicable to a case of *special* agency must apply and govern this case.

The decree of the chancellor is affirmed with additional costs.