## WOOD *et al.* v. FRENCH.

No. 2857.    Opinion Filed November 18, 1913.

(136 Pac. 734.)

1.  **ESCROWS—Vendor and Purchaser—Wrongful Delivery of Deed —Effect.**  Where the grantor retains the actual possession of the land, although such possession is not notice of his adverse claim of ownership, his escrow deed is invalid to transfer any right, in absence of performance of condition; and the wrongful yielding of possession of such deed to grantee by depositary transfers no title, even though the claimant thereunder be an innocent purchaser for value.

2.  **VENDOR AND PURCHASER—Innocent Purchaser—Notice of Defect—Inadequacy of Price.**  Where the grantor in an escrow deed retains the actual possession of the land, and his grantee, after wrongfully obtaining possession of such deed, without performance of the escrow condition, sells the land at a very inadequate price to an otherwise innocent purchaser for value, such inadequacy of price is evidence of notice of adverse claim of ownership by the grantor in such escrow deed.

3.  **CONTINUANCE—Application—Sufficiency.**  Application for continuance because of absence of witness, without showing that applicant believes to be true the material facts he believes the witness would prove, is insufficient under section 4207, St. Okla. 1893 (section 5045, Rev. Laws 1910).

4.  **SAME—Grounds—Diligence.**  In showing diligence to procure evidence, failure to take deposition of witness not amenable to nor served with subpoena is not excused by the promise of such witness to appear and give evidence at the trial, neither the reliance upon such promise nor the breach thereof being blamable to the adverse party; and it is not an abuse of judicial discretion to deny application for continuance based upon absence of such witness.

(Syllabus by Thacker, C.)

*Error from District Court, Sequoyah County;*
*John H. Pitchford, Judge.*

Action by Thomas F. French against Tim Wood and another.  Judgment for plaintiff, and defendants bring error.  Affirmed.

*Roach & Bradley,* for plaintiffs in error.

*Thomas J. Watts,* for defendant in error.

Opinion by THACKER, C. Plaintiff in error will be designated as "defendant" and defendant in error as "plaintiff," in accord with their respective titles in the trial court.

Plaintiff, a three-eighth blood Cherokee Indian, residing and engaged in business in Los Angeles, Cal., owned in Sequoyah county, Okla., 80 acres of inherited allotted land worth $3,200, which he wanted to sell when, in May, 1909, at Chouteau, Okla., while en route to Muskogee, Okla., he met one John Culver, who claimed to have known him at the Male Seminary the plaintiff had attended at Tahlequah, but, although believed, Culver was not remembered by plaintiff. . Culver told plaintiff he knew a party who bought land, and took him to the office of and introduced him to H. R. Pierson the morning after their arrival in Muskogee. Pierson was engaged in some way in the land business and, representing himself to be authorized to purchase lands for the defendant H. B. Fields, who was by Pierson and Culver falsely represented to plaintiff as a wealthy oil man temporarily out of the city, he offered to purchase plaintiff's land at the agreed price of $3,200. Accordingly, plaintiff as seller, Pierson as purchaser for Fields, and Culver as disinterested depositary of escrow deed, came to an agreement whereby plaintiff's deed to Fields was signed, acknowledged, and so put in escrow and left with Culver to be by him delivered to Fields when he paid or mailed to plaintiff said $3,200. Plaintiff waited in Muskogee a few days and attempted to get in communication with Fields by phone, thinking he might get the money from Fields before leaving; but, failing in this, he left without having seen or heard from Fields and went to and spent some time at one or two places in each of the states of Colorado, Idaho, and Washington; and while on that trip he wrote Culver and, failing to get an answer, wrote Pierson, demanding a return of the deed if the purchase price was not forthcoming, receiving from Pierson a letter under date of June 20, 1909, which, so far as pertinent here, reads as follows:

"Yours received. Contents noted. I have not seen Fields. I learn he is in Colorado Springs. Just as soon as he returns I will send you all papers."

Fields was not, in fact, wealthy, nor an oil man, but was a carpenter, with an earning capacity of from $3.50 to $4.50 per day; and he had not been out of Muskogee on or about May 21, 1909, when plaintiff's deed was made and placed in escrow. Although Fields had stated to plaintiff, soon after the latter had discovered his deed had been wrongfully delivered and recorded, that he had, by his own check, provided Pierson with the $3,200 to pay plaintiff for the land, he testified at the trial more than a year later he had not provided $3,200 nor any amount by check, but had advanced, in money, $1,000, of which Pierson returned to him all in excess of $800, as the full amount of the purchase price, and $40 additional retained as agent's commission. Fields further testified he did not do business with banks and had kept the $1,000 so advanced, with $1,500 more, in the form of money in his trunk in his room at a boarding house in Muskogee; and he further claimed to have sold the land to the defendant Wood for $1,000, which is $2,200 less than the land was worth, the same amount less than he told plaintiff in the first instance it had cost him, and $160 more than he finally testified it had cost him. Fields admits the agency of Pierson in the purchase of the land for him; and the facts and circumstances in the case tend to show that, in respect to the representations made to plaintiff by Pierson, no less intimate legal relation than that of principal and agent existed between these parties. It also seems clear that Culver can be deemed to bear no more intimate legal relation to plaintiff than that of a disinterested ·depositary of the deed; and, if he was more intimately connected with those interested in procuring from plaintiff the making and wrongful delivery of the deed, it does not appear that knowledge of such fact can be imputed to plaintiff, so, in relation to plaintiff, he must be regarded as a disinterested depositary of the escrow deed.

Some time in the summer or about September 1, 1909, plaintiff returned to Muskogee and Culver assured him he was still holding the deed in escrow for payment of the purchase price; but, some time in August or September, plaintiff got information to the effect that the deed to Fields had been recorded, which

upon investigation he found to be true. Plaintiff further found that the deed had been recorded on May 21, 1909, the day next following the day he acknowledged it and put it in the hands of Culver as escrow holder; that it had been delivered to Fields; and that on July 2, 1909, Fields had executed to the defendant Wood a deed, which was recorded on July 17, 1909, purporting to convey this land for a consideration of $1,000, the receipt of which is acknowledged in the deed. Plaintiff had fruitless conferences with Fields, Pierson, Culver, and Wood, in which, accepting plaintiff's evidence as true in deference to the findings and judgment of the trial court, Fields claims to have advanced Pierson $3.200 for plaintiff by check, Pierson claimed to have thought Culver had paid the $3,200 to plaintiff, but without explaining from what source he thought the money had been obtained, Culver claimed to have thought plaintiff had been paid by Fields directly or through Pierson and admitted he had not paid him, and Fields, upon being finally charged by attorney for plaintiff with not having paid, and asked how much he had received for the use of his name in the transaction, said, "$200," but thereupon got mad and left the room with the statement that, if any more information was wanted, plaintiff and his attorney would have to see Pierson. Plaintiff, having failed to more definitely fix responsibility for the wrong done him or to obtain satisfactory amends, attempted to give public notice of his claim and the grounds therefor by making on September 27, and filing for record on September 28, 1909, in the office of the register of deeds of Sequoyah county an affidavit of the same, which was recorded in the Miscellaneous Records of that office; and on February 24, 1910, he commenced this action, recovering judgment on January 20, 1911, canceling the said deeds, together with the records thereof, removing cloud from his title, and perpetually enjoining defendants from setting up any claim adverse to plaintiff to said land and from disturbing him in the peaceful and quiet enjoyment of the same. The defendant Fields suffered judgment by default; but the defendant Wood answered by denying that plaintiff's deed was ever in escrow, by alleging, in effect, that plain-

tiff had delivered it to Fields, and that Wood, without notice of any defect in Field's title, had in good faith and for a cash consideration of $1,000, purchased the land of Fields, with prayer for judgment vesting the title in him and giving him immediate possession; and this defendant brings the case here by appeal from the aforesaid judgment in favor of plaintiff.

The actual possession of the land at the time of the making and placing in escrow of plaintiff's deed was, and at all times since has been, in the plaintiff, through his tenant.

In 1 Devlin on Real Estate (3d Ed.) sec. 322, it is said:

"Until the condition has been performed and the deed delivered over, the title does not pass, but remains in the grantor. If the condition is not performed, the grantee, we have seen, is not entitled to the deed. If the depositary deliver the deed without authority to do so from the grantor, or if the grantee obtain possession of it fraudulently, without performing the condition, the deed is void. The deed thus obtained conveys no title either to the grantee or purchasers under him, although, as was previously shown, the possession of a deed by the grantee is *prima facie* evidence of its delivery, yet, where it appears that the final transfer was dependent upon the compliance with certain terms and conditions, the party who claims under the deed must prove such compliance. His right to the deed and to the property conveyed is subject to the performance of a condition precedent, and this performance it is necessary to prove. That the condition upon which he was to receive the deed has been performed cannot be inferred from the fact that the grantee has the unexplained possession of the deed. 'If the party to be bound suffer the paper to go into the hands of a third person, with authority to deliver it in case certain conditions are complied with, a transfer of the paper without compliance with the conditions is no delivery, for want of authority in the agent to do the act. It is the duty of the party thus accepting a tradition of the instrument to see to it that the agent, in the act of transfer, is authorized to do it, unless he be the party's general agent.' An owner of a tract of land, having subscribed for stock in a railroad company, signed and acknowledged the deed for the land, which, it was agreed, the company should take in payment for the stock subscribed. The deed was placed in the hands of a third person, the grantor telling him that an agent would call in a short time, and deliver a certificate for the

stock subscribed, and the depositary was instructed, upon receipt of the certificate, to deliver the deed to the company's agent. The agent called, but did not have any certificate of stock; he, however, requested the depositary to place the deed in his hands, so that he might give it to the attorney of the company for examination. This was done, and the company sold the land. But it was held that the delivery by the depositary before the performance of the condition did not convey the title, and that the owner was entitled to have his deed and the deed made by the railroad company to its grantee set aside as void. But where persons, after an exchange of lands, had deposited their deeds in escrow, and transferred to one another the possession of their respective tracts of land, and the depositary had one of the deeds recorded without the grantor's knowledge, and a person in good faith took a mortgage on the land for a loan, it was held that, although the mortgagor neglected to pay off certain incumbrances, as he agreed to do with his grantor, still the lien of the mortgagee was valid."

In Tiffany, Real Property, sec. 406, p. 932, 933, it is said:

"An escrow is, it has been held, utterly invalid to transfer any rights until the performance of the condition; so that, if the person with whom it is deposited wrongfully yields possession thereof to the grantee, it cannot transfer any title, even though the claimant thereunder be an innocent purchaser for value. There are, however, several decisions to the effect that an innocent purchaser from one in possession of the land cannot be affected by the fact that the conveyance to his grantor was an escrow, and this view seems most in conformity to right and justice, and the policy of the recording laws."

Also, see: *Powers et al. v. Rude,* 14 Okla. 381, 79 Pac. 89; *Hunter Realty Co. v. Spencer et al.,* 21 Okla. 155, 95 Pac. 757, 17 L. R. A. (N. S.) 622; *County of Calhoun et al. v. American Emigrant Co.,* 93 U. S. 124, 23 L. Ed. 826; *Young v. Clarendon Twp.,* 132 U. S. 354, 10 Sup. Ct. 107, 33 L. Ed. 362; *Evarts v. Agnes,* 4 Wis. 343, 65 Am. Dec. 314; *Daggett v. Daggett,* 143 Mass. 516, 10 N. E. 311; *Smith v. Royalton Bank,* 32 Vt. 341, 76 Am. Dec. 179; *Taft v. Taft,* 59 Mich. 185, 26 N. W. 426, 60 Am. Rep. 291; *Wier v. Batdorf,* 24 Neb. 83, 38 N. W. 22; *Weber v. Christen,* 121 Ill. 91, 11 N. E. 893, 2 Am. St. Rep. 68; *Hicks v. Goods,* 39 Va. 479, 37 Am. Dec. 677; *Stone v. French et al.,* 37 Kan. 145, 14 Pac. 530, 1 Am.

St. Rep. 237; 11 Am. & Eng. Enc. Law (2d Ed.) 350; *Raymond v. Glover*, 104 Cal. Unrep. Cas. 780, 37 Pac. 772, 918; *Jackson v. Lynn*, 94 Iowa, 151, 62 N. W. 704, 58 Am. St. Rep. 386; *Steffian et al. v. Milmo Nat. Bank*, 69 Tex. 513, 6 S. W. 823.

We are of opinion that where the grantor retains the actual possession of the land, as in the present case, although such possession be not notice of his adverse claim (*Smith v. Phillips*, 9 Okla. 297, 60 Pac. 117; *Flesher v. Callahan et al.*, 32 Okla. 283, 122 Pac. 489), an escrow deed is utterly invalid to transfer any right, in the absence of performance of the condition, so that the wrongful yielding of possession of the deed to the grantee by the person with whom it is deposited transfers no title, even though the claimant thereunder be an innocent purchaser for value.

The defendant Wood claims to have paid $1,000, a very inadequate price, for this land; and, in view of the fact that plaintiff was in possession by his tenant, this would seem sufficient to have put him on inquiry with the resultant effect of charging him with notice of plaintiff's claim to ownership. In Tiffany, Real Property, sec. 479, p. 1086, it is said:

"The fact that a purchaser obtains the property at a very inadequate price is also, it is said, a fact which should put him on inquiry, and is accordingly at least evidence of notice by him of an adverse claim."

The foregoing views leave for consideration only the question as to whether the trial court erred in overruling defendant's motion for a continuance. The application was based upon the failure of Culver, who resided in Muskogee county and had promised defendant to be present as a witness at such trial in Sequoyah county, to appear as such witness; but, the application did not show that applicant believed to be true the facts he believed such witness would prove, nor in any manner excuse the failure to take and have his deposition at the trial. An application for a continuance must show that the applicant believes the facts he believes the absent witness would prove to be true. Section 4207, St. Okla. 1893 (section 5045, Rev.

Laws 1910); *Swope & Son v. Burnham, Hanna, Munger & Co.,* 6 Okla. 736, 52 Pac. 924; *Kirk v. Territory,* 10 Okla. 46, 60 Pac. 797; *Murphy v. Hood et al.,* 12 Okla. 593, 73 Pac. 261; *Terrapin v. Barker,* 26 Okla. 93, 109 Pac. 931; *Crutchfield v. Martin,* 27 Okla. 764, 117 Pac. 194; *Kilmer v. St. L. & Ft. S. & W. Ry. Co.,* 37 Kan. 84, 14 Pac. 465; *Struthers v. Fuller,* 45 Kan. 735, 26 Pac. 471; *M., K. & T. Ry. Co. v. Horton,* 28 Okla. 815, 119 Pac. 233; *Standifer v. Sullivan,* 30 Okla. 365, 120 Pac. 624; *Fire Ass'n of Philadelphia v. Farmers' Gin Co., ante,* 134 Pac. 443.

In a showing of diligence to procure evidence, the failure to procure the deposition of a witness resident in another county and not amenable to nor served with subpoena is not excused by his promise to voluntarily appear in person and give his testimony at the trial, the adverse party having in no wise contributed to cause reliance upon such promise or to cause the breach thereof and being free from blame; and it is not an abuse of judicial discretion to deny an application for a continuance based upon the absence of such witness. *Banker Min. & Mill Co. v. Allen,* 20 Colo. App. 351, 78 Pac. 1070; *Louisville & N. R. Co. v. Bishop,* 89 S. W. 221, 28 Ky. Law Rep. 321; *Continental Casualty Co. v. Hagarty,* 90 S. W. 561, 28 Ky. Law Rep. 925; *Texas & N. O. Ry. Co. v. Bancroft* (Tex. Civ. App.) 56 S. W. 606.

We are therefore of the opinion that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.