## CLEVENGER v. MOORE et al.

No. 17235. Opinion Filed Sept. 13, 1927.

(Syllabus.)

1. **Escrows—Deed Void When Wrongfully Delivered to Grantee While in Escrow.**

Where a deed is placed in escrow and is delivered to the grantee by the escrow holder without the performance of the conditions for delivery and without the knowledge or consent of the grantor, such deed is void.

2. **Same—Vendor and Purchaser—One Purchasing from Grantee not Innocent Purchaser.**

Where a grantee in such deed obtains possession thereof without the knowledge or consent of the grantor, and also obtains possession of the property without the knowledge or consent of the grantor, and transfers the property to a third person for value without notice, such purchaser obtains no title thereto as against the first grantor.

3. **Deeds—Action for Cancellation of Deeds —Sufficiency of Evidence.**

Evidence of the plaintiff examined, and held, error to sustain a demurrer thereto.

Commissioners' Opinion, Division No. 2.

Error from District Court, Washington County; H. C. Farrell, Judge.

Action by D. B. Clevenger against D. F. Moore et al. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

Rainey, Flynn, Green & Anderson, Pennell & Harrison, W. A. Chase, and Calvin Jones, for plaintiff in error.

Shipman & Lewis, for defendant in error D. F. Moore.

DIFFENDAFFER, C. This is an action brought by the plaintiff for the possession of lot 15, block 10, in the original town of Bartlesville, and for the cancellation of a deed therefor from plaintiff to defendant, J. D. Simmons, and also for cancellation of a deed made by J. D. Simmons to defendant D. F. Moore

The petition in substance alleges: That the plaintiff is the owner of said property, and that on or about the 15th day of September, 1922, defendant Simmons approached plaintiff with a proposition to trade certain property in Tulsa for her property in Bartlesville, and Simmons represented to her that the property in Tulsa was of the value of about $34,000, with a mortgage thereon of $16,000, and that the income from the Tulsa property would net to plaintiff an income of $250 per month after paying all the requirements of the mortgage thereon; that she did not examine the Tulsa property, but relied wholly and completely upon the representations made to her by defendants Simmons and Peay, and before going to examine the Tulsa property, she executed a deed to her property in Bartlesville and deposited said deed in escrow in the hands of the defendant Peay, and that under a verbal contract and agreement between her and Simmons, the deed was to remain in the hands of Peay in escrow and not to be delivered to Simmons or anyone else until she had examined the Tulsa property and agreed to take the property, and if after she had examined the Tulsa property she was not entirely satisfied therewith and did not, after such examination, agree to trade for said Tulsa property, then the deed was to be returned to her; and that plaintiff did not at any time authorize the delivery of said deed to Simmons or anyone else; that said deed was so delivered to defendant Peay, and sometime thereafter plaintiff examined the Tulsa property, and being dissatisfied therewith immediately announced to defendants Simmons and Peay that under no circumstances would she accept the Tulsa property in exchange for her property in Bartlesville, and immediately demanded the return of the deed to the Bartlesville property; that she made repeated demands therefor, but that the deed was never returned to her, and that said deed was delivered, without her knowledge or consent, to Simmons, and afterwards placed of record; that she had in no way ratified or confirmed the unlawful act of Peay in delivering said deed to Simmons, and that she did not authorize the same or consent thereto in any way.

The petition further alleges that after the delivery of the deed to defendant Simmons, he fraudulently induced a tenant of plaintiff to give to the defendants Simmons and Peay the possession of said property, and that they did make some repairs thereon, but that the same was done without her authority and without her knowledge or consent; and that thereafter Simmons made a pretended sale of said property.

The defendant Simmons answered by general denial. The defendant Moore answered by general denial; and as a further answer and defense to plaintiff's petition, and as a cross-petition and counterclaim against plaintiff, alleged, in substance, that on September 15, 1922, plaintiff was the owner in fee simple of lot 15, block 10, of the original town of Bartlesville, Okla., being a part of

the property described in plaintiff's petition, and that on that date, plaintiff made, executed, acknowledged, and delivered to the defendant Simmons her general warranty deed, by which she conveyed to said Simmons said lot 15, block 10, in the town of Bartlesville, which deed was thereafter, on the 25th day of September, 1922, filed for record in the office of the county clerk of Washington county, Okla.; and that thereafter, on January 4, 1923, defendant Simmons, joined by his wife, executed and delivered to him a general warranty deed for said lot 15; that at the time of the delivery of the deed from Simmons to him, Simmons was in possession thereof; that his possession was open, notorious, adverse, and exclusive; that he caused the abstract of title to said property to be examined by an attorney, and made every reasonable inquiry and effort to ascertain the condition of the title and outstanding rights, if any, of any other person, and that he bought said property and paid value therefor in the utmost good faith, without any knowledge of any claim by the plaintiff or any other person to any right or interest in the same; that he bought said property in good faith, for value, without any notice or claim by the plaintiff that her deed had been delivered to defendant Simmons without her authority. He further alleged that, at that time, he had every reason to believe, and did believe, and alleges that plaintiff's deed was regularly delivered, and that plaintiff had knowledge of the fact and had no intention to dispute the regularity of conveyance or the authority of delivery of the deed; that, in fact, said property had been advertised by real estate agents as the property of Simmons, and plaintiff knew at the time that the property was being offered for sale, as the property of Simmons; that she made no objection thereto and took no action and gave utterance to no expression which would indicate that she had any claim on the property; and alleges, further, that he immediately went into possession thereof, and had ever since received the rents and profits therefrom, and prayed for judgment awarding to him all the right, title, and interest in said lot.

Plaintiff replied by general denial. Upon the issues thus joined, the cause was tried to a jury, and at the close of plaintiff's evidence, the court sustained a demurrer thereto and dismissed the action, and from said judgment, the plaintiff brings this appeal.

At the trial, it was stipulated that plaintiff was, on the 15th day of September, 1922, the owner of the property involved. The evidence of plaintiff, in substance, was that on the 15th day of September, 1922, Peay came to Bartlesville and informed her that he had brought Simmons to show him her building, and asked if she wanted to trade, and she replied that she might; that Peay then told her that he had shown Simmons the building, and Simmons had a fine apartment in Tulsa, known as the Fairview Apartment, a brick front, worth about $32,-000, which was mortgaged for about $15,000 or $16,000, and that he would make the trade for her building, if she would assume the mortgage on the Simmons building in Tulsa, and told her that the Tulsa property was renting for about $250 net, after paying all expenses necessary to take care of the loan; that Peay had the deeds already made out and brought them along with him, and that he would hold them and take care of them until she looked at the Tulsa property; that she signed and acknowledged the deeds and turned them over to Peay to be held and kept in the safe of one Mr. Grant in Tulsa until she could inspect the Tulsa property; that about a week thereafter, she went to look at the Tulsa property, and that the same was not as represented to her, and that it had no brick front. She refused to make the trade and there told Peay that she would not take the property at all, and that she wanted her deed returned to her; that Peay told her the deed was up at Mr. Grant's office, and that Grant was not there, and that he, Peay, could not get into the safe, and Peay told her that when Grant returned he would get her deed and bring it to her; that Peay officed with Grant. The evidence further shows that about a week after her visit in Tulsa, Peay came to her and told her that Simmons had a fine ranch; that he was going to look it over and that perhaps she might like to trade her property for the ranch; and that in about a week Peay again came to her and told her that Simmons had a fine ranch near the city of Grove, and that he wanted her to go and see it and perhaps she would trade her property for the ranch; that she then went to see the ranch and agreed to trade her building in Bartlesville for the ranch. She then went to the bank with Peay to close the trade for the ranch, but it developed that Simmons did not own the ranch, but one Dr. Holland owned it. He then told her that there was a federal loan on the ranch of $10,000, which would be closed in about 10 days' time, and this loan would run for about 32 years at five per cent., and that there was

a short time mortgage to some individual on the ranch for $4,000, and another mortgage for $2,000, both of which were to be taken up with the federal loan, and that she would be paid the balance, $4,000. Dr. Holland's deed was deposited in the bank where all the papers were to remain until the federal loan of $10,000 was completed. This loan was never completed, however, and on account thereof that deal fell through. She never received any deed for the ranch, and she never received anything whatever for her Bartlesville property.

The negotiations for the ranch covered some considerable period of time from about the middle of October. She had her Bartlesville property rented to a Mr. Price whose lease expired about November or the 1st of December; that she continued to collect the rent from Price until he moved, which was about the 1st of December; that she then tried to rent her building to other parties, but was unable to do so; that about the 1st of December, she went to Wichita, Kan., and remained there until about the first part of January; that she did not know anything about anybody occupying the building in January, 1923; that she never authorized the delivery of her deed to Simmons; and that the first that she learned that the deed to Simmons had been placed on record was in January, 1923, after she came back from Wichita, Kan., that at the time, she learned that the deed to Simmons had been recorded, she also learned that the property had been deeded by Simmons to Moore; that immediately upon her learning that her deed to Simmons had been placed of record she tried to find Simmons, but could not, but did find Peay, and he assured her that there was no such a thing as a sale having been made, and that Simmons could not have sold it, and had not sold it, and assured her that there was nothing wrong, because Simmons had not sold it and could not sell it; that she returned to Bartlesville and phoned to the county clerk's office, and was again informed that her property had been transferred to Moore. She then went back to Peay about it, and again tried to see Simmons, but could not find Simmons, and Peay again denied that her property had been sold, and again told her that Simmons could not sell it. She further testified that she did not know how or when Simmons got possession of her property or of the deed. On cross-examination, she was asked if she did not deliver her deed to Peay for him to make the trade. She stated positively that she did not, and that the deed was deposited

with him in escrow to be kept in Grant's safe until such time as the trade was completed; that she thought all the time while they were negotiating for the trade for the ranch that her deed was still in escrow, but that during the time she demanded the return of her deed a number of times. The record discloses that the deed to her property was placed of record on the 25th day of September, 1922, just ten days after it had been signed by her. But the evidence of Grant, in whose safe the deed was placed, shows that the deeds were to be delivered to the respective parties after the deal for the Tulsa property was consummated, but that the deeds were to go back to Mrs. Clevenger and Simmons if the deal was not closed. It further appears, from the evidence of Grant, that defendant Peay had access to his safe.

The plaintiff sets up five assignments of error, but presents them here in three propositions:

First. That where a deed is placed in escrow and the same is delivered to the grantee without performance of the conditions for delivery such deed is absolutely void.

Second. That the first proposition applied to an innocent purchaser. In other words, the deed being obtained without performance of the condition, the same is absolutely void, passes no title, and the said title remains in the grantor. Therefore the grantee has no title which he can pass to an innocent purchaser, and there can be no innocent purchaser thereof.

Third. That in passing upon a demurrer to the evidence the court must give to the evidence of plaintiff all reasonable inferences, presumptions and deductions, and must consider all evidence favorable to said defendant as withdrawn, and when so done, if there is any evidence whatsoever, however slight, justifying a recovery in favor of the said plaintiff the demurrer should be overruled.

We think the evidence clearly shows that the deed to plaintiff's property was placed in escrow and was delivered to defendant Simmons without the fulfillment of the conditions and without any authority whatever from the plaintiff and in violation of the escrow agreement, which is sufficient to make out a clear case in favor of plaintiff as against the defendant, Simmons, and that the only question for us to consider in this case is: First, where a deed is placed in escrow and the same is delivered

to the grantee without performance of the conditions for delivery, is such a deed absolutely void? And second, what are the rights of one claiming to be an innocent purchaser for value of the property from such grantee, where such grantee is in possession of the property without the knowledge or consent of the grantor? The first question, we think, is well settled in this state. In Hunter Realty Co. et al. v. Spencer et al., 21 Okla. 155, 95 Pac. 757, this court, in the second paragraph of the syllabus, said:

"No title will pass by a deed which is not delivered by the grantor or some one duly authorized by him."

And in the case of Taylor v. Parkins, 74 Okla. 206, 178 Pac. 117, it was held that a deed does not operate to convey title until delivered, and that where the possession of a deed placed in escrow is obtained without the performance of the condition upon which delivery thereof was to be made, no title passes therefor.

We think these cases clearly state the rule in cases of this character where the question is between the grantor and grantee.

In the case of Wood et al. v. French, 39 Okla. 685, 136 Pac. 734, this court said:

"We are of the opinion that where the grantor retains the actual possession of the land, as in the present case, although such possession be not notice of his adverse claim (Smith v. Phillips, 9 Okla. 297, 60 Pac. 117; Flesher v. Callahan et al., 32 Okla. 283, 122 Pac. 489), an escrow deed is utterly invalid to transfer any right in the absence of performance of the condition, so that the wrongful yielding of possession of the deed to the grantee by the person with whom it is deposited transfers no title, even though the claimant thereunder be an innocent purchaser for value."

It will be observed that in that case, the court went so far as to say that where a grantor retains possession of the land, though his possession is not notice of his adverse claim, the escrow deed is utterly invalid to transfer any right, in the absence of performance of the conditions, even though the claimant thereunder be an innocent purchaser for value.

The second proposition of plaintiff's brief is, that the deed being obtained from escrow, without performance of the conditions, is absolutely void, passes no title, and the title remains in the grantor, therefore the grantee has no title which he can pass to an innocent purchaser, and that there can be no innocent purchaser.

In considering this proposition, it must be borne in mind that this class of cases is to be distinguished from those in which the signature to the deed, or consent to its delivery from the escrow holder, is obtained by fraud. In the latter class, the rule is everywhere recognized to be that an innocent purchaser from such grantee will be protected, and the distinction seems to be made on the ground that, where the instrument is obtained from the escrow in violation of the terms thereof, and without the knowledge or consent of the grantor, it is equivalent to taking the instrument from his possession by theft. While in the other class the grantor consents thereto and has knowledge of such delivery, and where it is a question of whether he or another innocent person must suffer from the fraud, he will be held to suffer the loss rather than the innocent purchaser who takes without knowledge.

It is conceded by defendant that the case of Wood v. French, supra, cited by counsel for plaintiff, at least tends to support plaintiff's claim in this case, but defendant insists that Wood v. French, supra, was based upon the fact that the grantor remained in possession of the land. Defendants' counsel state that, so far as their research has led, in no case has it been held that an innocent purchaser from a record owner in possession thereof fails to acquire title thereto, by reason of the fact that his grantor's title came through a deed which had been delivered out of escrow before performance of the conditions of the escrow agreement. The general rule as stated in 21 Corpus Juris, 885, is:

"A transfer to a subvendee of an instrument, wrongfully delivered to the grantee or obligee, confers no right or title upon him where he has notice of such delivery, or is put upon inquiry regarding it. Further, although there is some authority to the contrary, according to the weight of authority the same rule applies even in the case of an innocent subvendee without notice of the conditions or even stipulated in the escrow contract, and is especially applied in cases where the escrow has been obtained or delivered through fraud."

There is some authority to the contrary: Hubbard v. Greely, 84 Me. 340, and Blight v. Schenck, 10 Pa. 285. In support of the majority rule cases are cited from Colorado, Georgia, Illinois, Indiana, Iowa, Kansas. Nebraska, New Jersey, Oregon, Texas. Vermont. Wisconsin, and also the case of Wood v. French, supra.

We have read all the cases cited, and one

of the earliest cases on the subject seems to be the case of Smith v. South Royalton Bank, 32 Vt. 341, 76 Am. Dec. 179, where it is held that a deed delivered in escrow to be delivered to the grantee, after the performance of some other act, will not be valid for any purpose until the condition upon which it is to be delivered to the grantee has been performed; and the fact that the deed has since come into the hands of an innocent purchaser for value will not change the rule in that case. However, it does not appear that the grantor had surrendered possession of the property. In that case, the court, however, after discussing the principle of the rule as applied to commercial paper, says:

"But let the principle be as it may, in regard to commercial papers, no question can be made as to a void deed. The case of Van Amringe v. Morton, 4 Whart. 382 (34 Am. Dec. 517), is ruled expressly on the distinction between a void and a voidable deed, and it was there held that a bona fide purchaser for a valuable consideration, from the person holding a void deed, stands in no better situation than such fraudulent holder. The distinction is fully recognized in Price v. Junkin, 4 Watts, 85 (28 Am. Dec. 685), and the case decided upon that distinction. So, in Arrison v. Armstead, 2 Pa. St. 191, 195, it was held that a deed having been rendered void by an alteration, a purchaser without notice and for valuable consideration was in no better situation than the original parties. The case in 4 Wharton, as in the case at bar, was one where there had been no valid delivery of the deed. So in the case of Pawling v. United States, 4 Cranch, 219, there had been no delivery of the deed. It hardly need be remarked that if a deed wants delivery, it is void ab initio.

"Where a bona fide purchaser for value holds under a vendee who holds by a voidable deed, though he and the creditors of the vendor have equal equities, yet the purchaser has also the legal title, and shall be preferred. In the case at bar, though the billholders of the bank, represented by the treasurer and the orators, have equal equities, yet as the bond and deed are void, the legal title remains in the orators, and they should be preferred, under the common rule, that where the equities are equal, the one having the legal title prevails."

Another early case on the subject is the case of Everts v. Agnes, 4 Wis. 343, which case was again before the court on a second appeal in Everts v. Agnes et al., 6 Wis. 453. That case was one where the facts are almost identical with those disclosed in the record in the case before us. On the first appeal, 4 Wis. 343, the court did not decide the question fully as to the rights of the person claiming to be an innocent purchaser, and did not there hold that the facts brought the purchaser within the class of innocent holder; but upon the second appeal, the court said:

"The only material difference between the case as now presented, and its character on the former occasion is, that now the defendant, Swift, appears in the attitude of a bona fide purchaser, whereas before he did not; and the only question necessary to be now considered is whether, under the circumstances, he is entitled to protection as such bona fide purchaser, or, in other words, whether he derived title by virtue of his conveyance from Agnes, he having paid to the latter a valuable consideration without notice of the manner in which he obtained the deed of Everts and wife.

"It certainly cannot be deemed necessary to repeat, at this time, the observations made upon this branch of the case when it was before us on the former appeal. Our views remain unchanged, except that we are more thoroughly satisfied that the intimations and reasoning then made were correct, and we are prepared now, after another careful review of all the facts and circumstances of the case, to affirm confidently what we then might have uttered doubtingly."

In that case Everts, the plaintiff, was the maker of the deed. Agnes, one of the defendants, was the one to whom the deed had been wrongfully delivered from escrow, and Swift, the other defendant, was the one to whom Agnes had conveyed the property and made his defense upon the ground that he was an innocent purchaser for value without notice, and set up in his answer, as did Moore in the instant case, that at the time he made the purchase he caused the record to be examined, obtained full abstract of Agnes' title, and believed he (Agnes) had a good title and gave him, Swift, one, except as to the balance due on a mortgage, subject to which Swift made the purchase. Also, that before he made the purchase he visited the premises and found Agnes and Bender in possession; that Agnes had been in undisputed possession there the preceding summer, and assured Swift his title was good; denies all notice, at the time of the purchase and payment of consideration money, as to the manner in which Agnes got the deed from Zettler (the escrow holder), and all notice of the conditions under which the deed was left by Everts with Zettler. He further alleges, in his answer, that Everts, before any of these transactions, resided in the neighborhood of the premises, and saw Agnes in possession without objection; that the possession was given Agnes, at the

date of the contract between Everts and Agnes, and that Agnes held possession until he sold the premises to Swift. It will thus be seen that, in that case, the facts appeared more strongly against the plaintiff than in the instant case, for the reason that the evidence in this case, as the record now stands, is that the plaintiff did not know that Simmons ever was in possession, did not know how he obtained possession if he was in possession, and that such possession was without her knowledge or consent. The court in the case of Everts v. Agnes, supra, held:

"We have not the slightest doubt that the deed of Everts to Agnes was delivered to Zettler as an escrow, to be delivered only upon the performance of the conditions prescribed; that Agnes fraudulently obtained possession of the deed, and fraudulently procured it to be recorded; that no title passed to Agnes, and hence he could convey none to Swift. The latter has his remedy upon his covenant against Agnes, if any there be. This is the only point necessary to be considered at this time, and we adhere to the language and the conclusion adopted when this case was under consideration before, viz., that the fraudulent procurement of a deed, deposited as an escrow from the depository by the grantee named in the deed, would not operate to pass the title; and that a bona fide purchaser from such grantee so fraudulently procuring the deed, could derive no title from him, and would not be protected."

The case of Everts v. Agnes, supra, has been cited by a great number of the courts in other states as the leading case on this question, and was followed in the case of Dixon v. Bristol Savings Bank, 102 Ga. 461, 66 Am. St. Rep. 193, where the court on the question of possession said:

"The question of possession is not material where there has been an unauthorized delivery of an escrow, or where it has been obtained fraudulently, for the reason that the parties claiming under the grantee named in the escrow cannot be protected, unless it is shown that the grantor ratified its delivery or that the depository was the grantee's agent to procure delivery."

The rule laid down in the Wisconsin case, Everts v. Agnes, supra, seems to have been followed in the following cases: Chipman v. Tucker, 38 Wis. 43, 20 Am. Rep. 1; Tyler v. Cate et al. (Ore.) 45 Pac. 800; and Weghorst v. Clark et al. (Colo.) 180 Pac. 742, where it is said:

"The only way, if any, in which a grantee of a grantee of a recorded undelivered deed can claim anything against the grantor in such deed is by estoppel in pais through the grantor's neglect to take immediate meas-

ures to recover his land, thus leaving an apparently good title shown by the record." Harkreader v. Clayton (Miss.) 31 Am. Rep. 369; Spots et al. v. Whitaker et al. (Tex.) 157 S. W. 422; Houston v. Adams et al. (Fla.) 95 South. 859; Jackson v. Lynn, 94 Iowa, 151 58 Am. St. Rep. 386.

We have given due consideration to the cases cited by defendant, wherein third persons claiming as innocent purchasers have been protected under circumstances somewhat similar to those in the instant case, but we think the great weight of authority, as well as better reasoning, is found in those cases holding the other way. The defendant in his brief says:

"In passing upon a demurrer to the evidence the court does not weigh the evidence. The demurrer admits every fact which the evidence in the slightest degree tends to prove, and all inferences and conclusions that may be reasonably and logically drawn from the same, and where there is any conflict in the plaintiff's evidence that would make any part of it unfavorable to the plaintiff or sustains the defense, the court in passing upon such demurrer should consider such evidence withdrawn."

Applying this rule, we think the trial court committed error in sustaining the demurrer to plaintiff's evidence, and that for the reasons stated, this cause should be reversed and remanded for a new trial.

BENNETT, HALL, HERR, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 21 C. J. pp. 883, 884, §29; 10 R. C. L. p. 627; 2 R. C. L. Supp. p. 1026; 4 R. C. L. Supp. p. 670. (2) 21 C. J. p. 886, §31. (3) 21 C. J. p. 896, §46; 38 Cyc. p. 1548.